Filed 7/17/14  Marriage of Davis CA2/6

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| In re Marriage of JESSIE and JAMES L. DAVIS. | 2d Civil No. B243382 (Super. Ct. No. 1343373) (Santa Barbara County) |
| JESSIE DAVIS,<br><br>        Appellant,<br><br>v.<br><br>JAMES L. DAVIS,<br><br>        Respondent. | |

Jessie Davis (wife) appeals from a judgment dissolving her marriage to James Davis (husband).  Wife contends that the trial court erroneously (1) denied her motion to continue the trial, (2) denied her request for attorney fees, (3) refused to impose sanctions against husband, and (4) failed to order that all spousal support be nontaxable to her.  We affirm.

*Background*

For over 30 years, husband was married to his first wife, Nancy Davis.  They separated in 2006, and their marriage was dissolved in the spring of 2008.

Husband married wife in September 2008.  They separated 20 months later.  They did not have any children.  On May 7, 2010, wife filed a petition for dissolution of the marriage.  The trial court ordered husband to pay wife temporary spousal support of $10,000 per month, retroactive to May 20, 2010.

In March 2011 the trial court issued an order to show cause why husband should not be held in contempt. The grounds for the contempt proceeding were that, in violation of previous court orders, husband had not made spousal support payments of $83,548 and had not paid wife's attorney fees of $45,000. In February 2012 all of the issues in the contempt proceeding were settled by husband's conveyance to wife of residential property in Kentucky. The property was appraised at $325,000. The court found that wife had received "improved real property in Kentucky that has no debt and that she is listing for sale at $325,00."

At the time of trial in April 2012, wife was 41 years old and husband was 69 years old. After the trial, the court filed a 31-page statement of decision. The court noted that wife had claimed that (1) she was "unable to work due to . . . back injuries," (2) husband had "supported [the parties] with his $12 million of earnings during marriage," (3) husband had "made it clear he had secreted his money in offshore accounts out of reach of his [former] wife," (4) "there is an estate of $40 to $80 million in dispute with his [former] wife," and (5) "that the marital standard of living in this marriage was $125,000/mo[nth]; the couple spent $2.5 million during the 20[-]month marriage." Wife requested that the community property, including the $12 million in earnings, be divided equally between the parties. After taxes, her share of the earnings "would be about $3.6 million." Wife estimated that husband's present income is $10 million per year. She sought spousal support of $62,500 per month "for up to three or four years, plus one semester."

Wife testified at the trial; the court concluded that she was not a credible witness. The court stated: "I could not find any plausible evidence from her testimony that husband ever 'earned' any money during the marriage; in general her testimony was not cohesive; the documents presented were not convincing; her demeanor in testifying . . . was not persuasive." "The testimony of offshore accounts . . . appeared implausible; she may well have speculated or hoped that husband had off shore accounts, . . . but the Court in a dissolution action needs hard evidence, not speculation."

In contrast to wife, the trial court found Pamela Mannix to be a "very credible" witness. Mannix testified as follows: In January 2012 an Indiana court appointed her as

2

husband's "Guardian Ad Litem." Husband currently lives in two residences: one in Kentucky and the other in Indiana. He pays monthly rent of $800 for the Kentucky residence and $600 for the Indiana residence. Husband has "[f]rontal lobe dementia" and "sits in a rocking chair watching television all day." Husband asked Mannix to assist him in June 2010. At that time, she believed that he was mentally impaired. The trial court stated, "I am satisfied that husband has dementia."

Mannix further testified: Husband's monthly social security income is $1,143, and he has "no other money." To pay for his rent and maintenance, husband borrowed about $18,000 from Mannix and her husband. He also "borrowed around [$]6,000 two or three times from his daughter." In addition, husband borrowed $25,000 from Mannix's brother-in-law to pay for his present attorney. He owes a "big" debt to the Internal Revenue Service. As Guardian Ad Litem, Mannix applied to the State of Indiana for permission to sell 12 vehicles owned by husband. He needs to sell them to have funds to pay attorney fees and "be able to live. He's got to survive, and he has no cash to do so." Mannix estimated that, if all 12 vehicles are sold, husband will receive approximately $300,000. In 2008 and 2009 husband filed tax returns for his company, Davis Metal Sales. Mannix examined the returns, which showed that the companies had "[z]ero activity."

The trial court also found Steven Garner, a forensic accountant, to be a "very credible" witness. He testified that, on the date of husband's marriage to wife in September 2008, husband had financial accounts with a net worth of $2,044,255. On February 29, 2012, the only remaining account was a checking account with a balance of $433. Garner examined husband's tax returns for 2008, 2009, and 2010. The returns showed that he owed no tax.

The trial court found husband's former wife, Nancy Davis, to be "a credible witness." Nancy Davis testified as follows: She and husband have three children. In 2007 their "money was equally divided," and they each received approximately $2.4 million. They own a 500-acre farm that has not yet been divided. They purchased the farm for $2.4 million in 1988. If the farm were sold at auction, they probably "could double it [the purchase price] and get [$]5,000,000." Documents filed by wife have created a cloud on the

3

title to the farm. Husband had a metal business that he closed in 2003. Husband owes child support arrearages, has been unable to contribute to his children's college education, has not paid the insurance on the farm, and is "behind on the taxes."

The trial court determined that "there was no community property acquired during the marriage," so "[t]here is no property to be divided." The court granted husband's motion to terminate spousal support, retroactive to May 19, 2011. The court observed that, as of that date, wife had been awarded 12 months of temporary spousal support. It explained: "[T]his was only a 20[-]month marriage and there is no reason not to follow the general rule that 'permanent spousal support' will equal a duration of 1/2 the length of the marriage or 10 months." The court found that wife "clearly has the necessary marketable skills to be employed" and that she "can be self[-]supporting."

The court noted that it had previously awarded wife attorney fees of $160,000. It refused to award additional fees. The court found that husband's total unpaid arrearages for spousal support and attorney fees were $161,203. The court also found "that wife has now received [from husband] real property (worth $325,000) [in settlement of the contempt proceeding] plus she had previously been paid $30,000 in cash and [her] attorney had received $15,000 in cash." The court concluded that it was "absolutely satisfied wife and her counsel have been awarded all they are entitled to under the unique facts of the case."

*Denial of Continuance*

Wife contends that the trial court abused its discretion in denying her request to continue the trial because husband had not paid her need-based attorney fees and had not complied with court-compelled discovery. Wife argues: "Without the money [i.e., payment of her attorney fees, she] was economically cut-off from all possible out-of-state evidence. She made clear to the court that Kentucky was where the relevant witnesses (and [husband]) could be deposed. Without such evidence, she could not present her case." Wife continues: "In the days leading to trial, [husband] produced records from only one of at least three banks, dumping 4,000 statement pages through the day prior to trial confirmation. The court abused its discretion by denying [wife's] request for continuance so she could at least have time to review and analyze the massive trove of documents. [¶] Instead, the court set

4

trial to commence six days following trial confirmation . . . ."  "Without allowing access to discovery in advance of trial, it was a de facto denial of trial on the merits and a fair day in court."

"Trial continuances are disfavored and may be granted only on an affirmative showing of good cause.  [Citations.]"  (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1127; see also Cal. Rules of Court, rule 3.1332(c) ["[E]ach request for a continuance must be considered on its own merits.  The court may grant a continuance only on an affirmative showing of good cause requiring the continuance."].)  A request for a continuance must be made "by a noticed motion . . . with supporting declarations."  (*Id*., rule 3.1332(b).)

" 'The decision to grant or deny a continuance is committed to the sound discretion of the trial court.  [Citation.]  The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court.  [Citation.]' "  (*Thurman v. Bayshore Transit Management, Inc.*, *supra*, 203 Cal.App.4th at p. 1126.)  "It is the appellant's burden on appeal to show the trial court abused its discretion.  [Citation.]"  (*Cahill v. San Diego Gas & Elec. Co.* (2011) 194 Cal.App.4th 939, 957.)

Wife has not carried her burden on appeal.  In the argument portion of her opening brief, wife was required to set forth the affirmative showing of good cause for the continuance that she had made at the hearing on the motion for a continuance.  In determining whether a trial court abused its discretion, we consider the record before the court when it made its ruling.  (See *People v. Thomas* (2012) 53 Cal.4th 771, 798.)  Wife was also required to support the showing of good cause by references to the record.  Contrary to these requirements, wife's argument does not set forth the showing of good cause and does not contain any supporting record references.[1]  " ' "It is the duty of a party to

---

[1] Wife's reply brief contains numerous record references.  But she still does not present argument with supporting record references establishing the requisite affirmative showing of good cause for the continuance at the hearing in the trial court.  In any event, argument and record references in the reply brief are "too late because [husband] did not

support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations." [Citations.] If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived. [Citation.]' [Citation.] [¶] . . . This rule applies to matter referenced at any point in the brief, not just in the statement of facts. [Citation.]" (*Sky River LLC v. Kern County* (2013) 214 Cal.App.4th 720, 740-741.) " 'The appellate court is not required to search the record on its own seeking error.' [Citation.] Thus, '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived. [Citation.]' [Citations.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) The application of this rule is particularly appropriate where, as here, the record is voluminous. The clerk's transcript alone consists of 13 volumes and 3,900 pages.

Even if the trial court had erred in denying wife's motion for a continuance, "[a] judgment is reversible only if any error or irregularity in the underlying proceeding was prejudicial. [Citations, fns. Omitted.] Therefore, any error in failing to grant a request for a continuance . . . is reversible only if it is tantamount to the denial of a fair hearing. [Citations.] There is no presumption of prejudice. [Citations.] Instead, the burden to demonstrate prejudice is on the appellant. [Citation.]" (*Freeman v. Sullivant* (2011) 192 Cal.App.4th 523, 527-528.)

Wife has failed to carry her burden of demonstrating that the denial of a continuance was tantamount to the denial of a fair hearing. Wife was represented by counsel throughout the trial. It is speculative whether the granting of a continuance would have led to the discovery of admissible evidence that would have resulted in a more favorable outcome for wife.

*Denial of Attorney Fees*

At the conclusion of the trial, the court refused to award wife attorney fees in excess of the $160,000 it had previously awarded. In its statement of decision, the court declared:

---

have the opportunity to respond." (*Provost v. Regents of University of Cal.* (2011) 201 Cal.App.4th 1289, 1305.)

"Wife's attorney has requested $250,000 in fees and costs in this case; this Court has previously awarded $160,000. There was no justification for this trial; wife had no viable claims to present; there is no basis for husband to have to pay for wife's attorney fees incurred for this trial or to get ready for this trial. . . . [I]t is clear that any additional fees are unwarranted." Wife asserts that the trial court abused its discretion because it failed to make the analysis required by Family Code sections 2030 and 2032.[2]

" 'It is well established in California that, although the trial court has considerable discretion in fashioning a need-based fee award [citation], the record must reflect that the trial court actually exercised that discretion, and considered the statutory factors in exercising that discretion.' [Citation.] Thus, 'it is an abuse of discretion for trial courts to deny motions for pendente lite attorney fees and costs in marital dissolution proceedings without considering the needs of the requesting spouse and the ability to pay of the spouse against whom the award is sought.' [Citation.] Similarly, trial courts 'have a *duty* at the conclusion of the case to make a just and reasonable award of attorney fees and costs, considering the circumstances of the parties.' [Citation.]" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 315.)

The trial court did not abuse its discretion. It properly considered the circumstances of the parties. The court noted that the Kentucky "real property transferred [by husband to wife] in settlement of the contempt action has a fair market value of $325,000, much more than what was at issue on the contempt citation." The court pointed out that in the contempt action "the total demanded was $128,548.39 plus attorney fees and costs in pursuing [that] action."

The court also properly considered that wife's trial claims were wholly without merit and that "[t]here was no justification for the trial." A court should not award attorney fees that were not "reasonably necessary." (§ 2030, subd. (a)(1) ["In a proceeding for dissolution of marriage, . . . the court shall ensure that each party has access to legal representation . . . by ordering, if necessary based on the income and needs assessments, one party . . . to pay to the other party . . . whatever amount is reasonably necessary for attorney's fees . . . ."];

---

[2] All statutory references are to the Family Code.

*Alan S., Jr. v. Superior Court* (2009) 172 Cal.App.4th 238, 252, fn. 15 [" 'An award measured summarily by what the applicant has been billed or what his or her attorney is presently owed is an *abuse of discretion* if it does not reflect consideration of whether the fees allegedly incurred were reasonably necessary' "].) (*Id.* at p. 255.)

On a motion for attorney fees in a marital dissolution proceeding, " 'the trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. [Citations.]' [Citation.]" (*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866.) In view of the parties' circumstances and the lack of merit of wife's trial claims, it cannot be said that no judge could have reasonably limited wife's attorney fees to $160,000.

*Sanctions*

Wife argues that the trial court abused its discretion by refusing to impose sanctions against husband pursuant to section 271. "Section 271 provides that a family court may impose an award of attorney fees and costs 'in the nature of a sanction' where the conduct of a party or attorney 'frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.' (§ 271, subd. (a).)" (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1316.) "[S]ection 271 vests family law courts with an additional means with which to enforce this state's public policy of promoting settlement of family law litigation, while reducing its costs through mutual cooperation of clients and their counsel." (*Id.*, at p. 1318.)

Pursuant to section 271, in the trial court wife requested "monetary sanctions of $3,600,000, representing the after-tax value of the community asset here in dispute [i.e., wife's share of the alleged earnings during the 20-month marriage], discovery of which was dramatically prejudiced by Husband's rebellion against court orders to pay fees, and his undisputed hiding of hundreds of thousands of dollars by which he could have paid those fees as ordered." Wife has forfeited this issue because the argument portion of her opening

8

brief does not include any supporting record references. (*Sky River LLC v. Kern County*, *supra*, 214 Cal.App.4th at pp. 740-741.)

In any event, the trial court did not abuse its discretion. It found that there was no community property and that wife's testimony concerning hidden offshore accounts was "implausible." The court noted that it had previously "granted wife very significant attorney fees and sanctions . . . in reliance upon her attorney's contention that husband was consistently uncooperative . . . ." The court concluded that "under all the circumstances there is no justification for additional sanctions or sanctioned-based fees/costs." (Underlining omitted.) The trial court's ruling was not unreasonable, especially in view of husband's strained financial circumstances. "The only stricture imposed by this statutory provision [section 271] is that the sanctions may not impose an unreasonable financial burden on the party sanctioned . . . ." (*In re Marriage of Falcone and Fyke* (2012) 203 Cal.App.4th 964, 995.)

### Taxation of Spousal Support

In its statement of decision, the court declared: "Wife's request that her spousal support payable after April 1, 2011, be nontaxable to her and nondeductible to husband is granted." (Underlining omitted.) We reject wife's argument that all spousal support, including support payable before April 1, 2011, should be nontaxable to her because the parties made an agreement to that effect.

"Spousal support payments that qualify as alimony under federal law are deductible by the payor spouse and taxable to the payee spouse, although the parties may elect to characterize the payments as nondeductible and excludable." (11 Witkin, Summary of Cal. Law (10th ed. 2005) Husband & Wife, § 347, p. 452.) The issue of spousal support before April 1, 2011, was settled in February 2012 as part of the contempt settlement. The settlement agreement stated that it "would satisfy and resolve all issues . . . before the Court" in the contempt proceeding. The Affidavit of Facts Constituting Contempt showed that, through March 2011, husband had failed to pay spousal support of $83,548. The settlement agreement mentioned nothing about the taxation of spousal support.

9

During the trial, wife's counsel told the court that the Kentucky property received by wife pursuant to the contempt settlement had been "traded off" for "spousal support through March of 2011." The following colloquy then occurred between the court and wife's counsel:

"THE COURT: Your request, if I understand it correctly, is you want [husband] to be responsible for the taxes on spousal support only goes back [*sic*] to the payment that was due April 1, 2011?

"[Counsel]: Yes.

"THE COURT: And then prospectively thereafter?

"[Counsel]: Yes

"THE COURT: I got it."

Accordingly, the trial court did not err when it granted "[w]ife's request that her spousal support payable after April 1, 2011, be nontaxable to her and nondeductible to husband." (Underlining omitted.)

*Disposition*

The judgment is affirmed. Husband shall recover his costs on appeal.

NOT TO BE PUBLISHED.


YEGAN, J.


We concur:



GILBERT, P.J.



PERREN, J.

10

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Randy Warren, for Appellant.


Paul A. Roberts and Marcus S. Bird; Hollister & Brace, for Respondent.