[No. B114366. Second Dist., Div. Two. Oct. 14, 1999.]

In re the Marriage of KRISTAN KEECH and RICHARD C. KEECH.
KRISTAN KEECH, Respondent, v.
RICHARD C. KEECH, Appellant.

**[Opinion certified for partial publication.*]**

_____

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts, II.A., II.B. and II.C.

**COUNSEL**

Friedman & Friedman, Ira M. Friedman and Gail S. Green for Appellant.

Hindin & Abel, Robert Marc Hindin and Bruce David Abel for Respondent.

**OPINION**

**ZEBROWSKI, J.**—In a dissolution action between appellant Richard C. Keech (husband) and Kristan Keech (wife), husband appeals from an order

that determined, pendente lite, the amount of monthly spousal support and child support for which husband would be responsible, and the amount of wife's attorney and accountant's fees and costs husband was required to pay.

Husband's primary contention on appeal is that the court abused its discretion in ordering husband to pay $3,200 of wife's accountant's fees at the rate of $1,000 per month for the first three months, and $25,000 of wife's attorney fees at a rate of $500 per month thereafter. According to husband the required monthly payments of wife's professional fees, in conjunction with the amount of child and spousal support he was ordered to pay, left him insufficient funds upon which to live. Husband further complains about the manner in which the court determined that he should pay those fees and costs. In the published portion of this opinion, we conclude that the manner in which the trial court ordered husband to pay a "contributive share" of wife's attorney fees and costs under Family Code section 2030 et seq.[1] was an abuse of discretion. Accordingly, we reverse that portion of the order which pertains to wife's attorney fees and costs, and remand for further proceedings consistent with this opinion.

Husband also asserts that the court, in making its order concerning temporary spousal support, "failed to take into account" wife's earning potential, the rental income she was receiving, and the short length of time the parties were married. In the unpublished portion of this opinion, we affirm the trial court's determination with regard to temporary spousal support.

## I. Factual and Procedural Background

Husband and wife were married on December 27, 1986, and separated less than six years later in August 1992. Wife petitioned for dissolution later that same month. Husband is and was a physician; wife's employment, as a "medical bookkeeper," has been minimal and sporadic. The couple have two children, born in 1986 and 1990.

For undisclosed reasons the dissolution action did not proceed to judgment. In June of 1996, asserting he should not be required to, and could not in any event, further perform under a prior stipulation, husband filed an order to show cause (OSC) seeking, among other things, a determination of child support and spousal support. In July 1996 wife responded to the OSC, consenting to "guideline" child and spousal support, but asking that husband be ordered to pay her attorney and accountant fees.

Over the next several months the parties wrangled over wife's professed need for continuances and discovery, and filed multiple declarations of

---

[1]All further statutory references are to the Family Code unless otherwise indicated.

accountants and counsel in support of each party's arguments concerning the amounts of income and custody time properly attributable to husband and wife for purposes of guideline support calculations.

Wife contended her income was limited to approximately $500 per month. Husband's accountant eventually opined that husband's "gross cash flow available for support" was $5,405 per month. Husband argued that additional income should be imputed to wife on various grounds. Wife, on the other hand, disputed husband's reduced calculations of income, asserting that he had "hidden" sources of income and had artificially depressed the earnings of his medical corporation. The parties also disagreed over the percentage of time husband had custody of the children.

In support of her request that husband be responsible for payment of her accountant's and attorney fees, wife submitted a portion of the bills of her accountant, authenticated by the accountant's declaration. Wife did not, however, submit her attorney's bills, or any declaration by her counsel of the amount of time spent, the nature of the work done, or the rate charged. Wife's only "evidence" in this regard was her declaration that: "By the most recent bill I received . . . I owe approximately $31,000 to [counsel]."[2]

Husband contested wife's entitlement to professional fees, noting that there was no equity in the family home and no other source of funds from which the fees could be paid. Husband's declaration filed for the April 1997 OSC hearing recited that husband then owed his own attorney over $18,000; his January 1997 "income and expense" declaration had stated that at that time husband had incurred attorney fees of over $25,000. Husband also argued that wife's attorney fees were unreasonable and excessive for reasons including that wife had changed attorneys midstream.[3] Husband asserted that the majority of the fees charged by wife's new counsel had been incurred in attempting to obtain the file from the predecessor attorney, reviewing the file, and seeking the "eighth and ninth continuances" of the OSC. Husband's counsel further argued: "Mr. Keech has incurred a total of approximately $25,000 in fees and costs with approximately half of that having been paid in

---

[2]The only other possible indication of the amount of wife's attorney fees came during the hearing on the OSC, when wife's attorney stated: "Issue of attorneys' fees—I have not gotten paid anything—anything by Dr. Keech. My fees to date are approximately $35,000. If I do not get a contribution I will have to get off of the case and [wife] will be left without legal representation. . . . THE COURT: Have you been paid anything? [Wife's counsel]: I have, as reflected on the income and expense declaration, gotten a $2,500 retainer in this case. THE COURT: And how much has been incurred to date by you? [Wife's counsel]: Approximately $35,000. . . ."

[3]As far as the record on appeal shows, the attorney in question had not appeared in the action prior to January 21, 1997, roughly three months before the hearing on the OSC.

drips and drabs *over the entirety of the last year* during which time I had represented [husband]. [¶] Certainly it would be a little farfetched to say that in three months or four months of representation [by wife's new counsel] that $35,000 has incurred [*sic*] in attorneys' fees to represent [wife] when [wife's] own statements before this court, a majority of that is spent in attempting to retrieve and reviewing files from previous counsel. Certainly [husband] should not be responsible to have to pay any fees and costs associated with retrieving files and/or reviewing files from predecessor counsel because [wife] can hire and fire counsel whenever she so pleases and that should not impose an obligation on [husband] to have to pay for that." (Italics added.)

At the April 28, 1997, OSC hearing, the court announced its determination that husband had monthly gross wages, salary, and nontaxable income of $5,405, and that wife had monthly nontaxable income of $500. Combining those figures with the percentage of time husband was found to have had custody of the children (10 percent), the court determined (with the aid of the DissoMaster program) that husband would be required to pay, pendente lite, $1,468 per month in guideline child support and $800 per month in guideline spousal support. As "additional" child and spousal support husband was ordered to pay 90 percent of all uncovered medical expenses for the children and 50 percent of all uncovered medical expenses of wife.

The court also determined that husband would be required to pay, as his "contributive share" of wife's accountant's fees, the sum of $3,200, at the rate of $1,000 per month commencing May 1, 1997, and a $25,000 "contributive share" of wife's attorney fees and costs, payable at $1,000 per month commencing August 1, 1997.

Although the court had not yet filed an order embracing its April 28 findings, on May 8 husband filed a motion for reconsideration. Husband argued that the award of attorney fees was not supported by the evidence, and that the monthly payments of those fees ordered by the court, on top of the amounts ordered for child and spousal support, were such that husband was left with insufficient funds on which to live. In a declaration in support of his motion for reconsideration, husband attacked "the outlandish professional fees ordered which [were] solely based upon the oral assertion of more than $35,000 having been billed within a three month period of representation and with no backup or bills or even the same in writing to substantiate. As indicated by the court file, those fees were not and could not have been properly billed for the advancement of this case. . . . I cannot afford to pay all of my own attorney's fees and costs as well as 80% of [wife's] attorney's fees and costs. The same is grossly unfair given that [wife] has [as a result of the support order] more than 70% of the income."

On June 3, 1997, the court denied husband's motion for reconsideration, although it did amend its proposed order so as to reduce husband's future payments of wife's attorney fees (not accountant's fees) to $500 per month starting August 1, 1997. The court's order, filed the same day, also provided that in the event any payment of the professional fees was more than 15 days late, the entire unpaid balance would then become due and payable.

## II. DISCUSSION

A.-C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### D. *The Trial Court Abused Its Discretion in Awarding Attorney Fees and Costs.*

During the pendency of a dissolution action, a court may order that one party pay some or all of the other party's legal fees and costs. (§ 2030 et seq.) ▮ " 'California's public policy in favor of expeditious and final resolution of marital dissolution actions is best accomplished by providing at the outset of litigation, consistent with the financial circumstances of the parties, a parity between spouses in their ability to obtain effective legal representation.' " (*Droeger* v. *Friedman, Sloan & Ross* (1991) 54 Cal.3d 26, 41, fn. 12 [283 Cal.Rptr. 584, 812 P.2d 931].) ▮ "A motion for attorney fees and costs in a dissolution action is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse, its determination will not be disturbed on appeal. [Citations.] The discretion invoked is that of the trial court, not the reviewing court, and the trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. [Citations.]" (*In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 296 [149 Cal.Rptr. 918].)

However, "while the court has considerable latitude in fashioning or denying a pendente lite fee award its decision must reflect an exercise of discretion and a consideration of the appropriate factors. [Citations]." (*In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1219 [215 Cal.Rptr. 789].) The trial court's discretion in this area is thus limited by the statutes which enable the exercise of that discretion.

Under section 2030, subdivision (a): "During the pendency of a proceeding for dissolution of marriage . . . , the court may, upon (1) *determining an*

---

*See footnote, *ante*, page 860.

*ability to pay* and (2) consideration of the *respective* incomes and needs of the parties in order to ensure that *each* party has access to legal representation to preserve all of the party's rights, order any party . . . to pay the amount *reasonably necessary* for attorney's fees and for the cost of maintaining or defending the proceeding." (Italics added.) Under section 2032: "(a) The court may make an award of attorney's fees and costs under Section 2030 . . . where the making of the award, and the amount of the award, are *just and reasonable under the relative circumstances* of the respective parties. [¶] (b) In determining what is just and reasonable under the relative circumstances, the court *shall* take into consideration the need for the award to enable *each* party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320 [the factors for determination of 'permanent spousal support']. . . . Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (Italics added.)

The trial court's decision here does not reflect consideration of husband's ability to pay wife's professional fees at the rate of $1,000 per month (or indeed at $500 per month), does not reflect consideration of the respective litigation needs of the parties, and does not reflect consideration of whether the fees allegedly incurred were reasonably necessary. Accordingly we conclude the court abused its discretion with respect to the fee award.

The court found that husband's monthly income from all sources was $5,405. It then ordered husband to pay $1,468 per month in child support, and $800 per month in spousal support. Subtracting the required monthly payments of child and spousal support, and husband's monthly tax liability of $1,344 as indicated by the same DissoMaster report utilized by the court to arrive at the support figures, left husband $1,793 per month. Husband had previously declared that his monthly rent for a one bedroom apartment was $700, and there is no indication in the record that the court rejected husband's need to pay that moderate amount. Thus, after payment of child and spousal support, taxes, and rent, husband had $1,093 a month remaining. From this, the court ordered husband to pay wife's previously incurred accountant fees at the rate of $1,000 per month, leaving only $93 a month for husband to pay all of life's other expenses. On reconsideration, stating that it recognized the financial burden of the fee award, the court lowered the prospective payments for attorney fees to $500 per month.

Considering that the court also ordered husband to pay 90 percent of all uncovered medical expenses for the children, and 50 percent of all uncovered medical expenses for wife, the undisputed evidence of a lack of equity

in the former marital residence, and the lack of any finding concerning any other source of payment, we can discern no justification for ordering husband to pay wife's accountant's fees at the rate of $1,000 per month. Leaving husband $93 per month after payment of his court-ordered obligations and rent virtually speaks for itself. As to the prospective $500 monthly payments of wife's attorney fees, while it could perhaps be argued that leaving husband $593 a month after court-ordered obligations, taxes and rent *might* be equitable under the parties' strained circumstances, the record does not sufficiently reflect, for example, any consideration of the husband's needs to pay his *own* outstanding legal fees during that period. Yet the court in making the order was required to "take into consideration the need for the award to enable *each* party, to the extent practical, to have sufficient financial resources to present the party's case adequately." (§ 2032, subd. (b).)

Wife argues that the record "demonstrates [husband] had the cash flow to support the order." We disagree. The court's express findings of husband's monthly gross income left little room for payment of attorney fees and costs after payment of the monthly support obligation. Even if, due to the income disparity between the parties and husband's presumably greater earning capacity, we were able to ascertain from the record that the trial court was within its discretion in ordering husband to pay $25,000 of wife's attorney fees and $3,200 of the accountant's fees, this record would not support ordering husband to pay such sizeable monthly installments. The situation is somewhat similar to that in *In re Marriage of Schulze* (1997) 60 Cal.App.4th 519 [70 Cal.Rptr. 584, 812 P.2d 931], where the reviewing court, although it found the total amount of fees husband was ordered to pay was appropriate, also found that the court erred in requiring the payment to be made "forthwith": "The family support order left Michael with less than $2,000 a month in actual cash. It is clear the trial judge presumed Michael would be able to obtain the $7,500 from his parents. This presumption was error. . . . Nothing showed that Michael had, or was reasonably likely to have, the 'ability to pay' the $7,500 forthwith except the notion that Michael's parents' generosity could be taken for granted. In light of the absence of any liquid assets, it was unreasonable not to have allowed Michael to pay the $7,500 attorney fee order in manageable installments, *consistent with the income he had left after he paid the family support order*." (*Marriage of Schulze, supra,* 60 Cal.App.4th at pp. 531-532, italics added.)

Wife points out that: " '[T]he cases have frequently and uniformly held that the court may base its decision on the [paying spouse's] ability to earn, rather than his [or her] current earnings . . .' for the simple reason that in cases such as this, current earnings give a grossly distorted view of the

paying spouse's financial ability. [Citation.]" (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 769 [209 Cal.Rptr. 354, 691 P.2d 1020].) In this case there is no indication the trial court based its decision on husband's "ability" to earn. More significantly, perhaps, there is no indication the trial court considered the proper factors in determining whether the fees awarded were reasonable and necessary in the first place.

This case involves a relatively short marriage, with no substantial marital estate, and no child custody dispute. According to the court's findings, wife had almost no income, and husband was earning approximately $65,000 per year. Despite the relative dearth of issues and of assets, the parties allegedly incurred at least $60,000 in attorney fees; $35,000 of which was allegedly incurred by wife over the course of roughly three months immediately prior to the hearing on the OSC. Yet the court ordered husband to pay $25,000 of wife's fees on nothing more than wife's secondhand comment (albeit in a declaration) about what her latest "bill" stated, and on wife's counsel's unsworn representation that she was owed "approximately $35,000."[5]

Assuming for purposes of argument that fees of that magnitude were actually incurred, still the court made no inquiry into whether the fees were, in the words of section 2030, "reasonably necessary." The court made no evaluation of the legal work done on wife's behalf despite husband's objection that, based on wife's own prior filings and requests for continuance of the OSC, it appeared much of the time was spent seeking to get file materials from prior counsel, "reinventing the wheel," or requesting additional continuances. Without ascertaining whether or at what hourly rate the work for which reimbursement was sought was actually done, much less that the work was "reasonably necessary" in light of the issues in the case, the trial court could not properly find that imposing upon husband approximately 70 percent of wife's legal bill was "just and reasonable under the relative circumstances of the respective parties" as required by section 2032.

Acknowledging the fact that it appears husband's own fees were represented to have approximated or exceeded $25,000 does little more than allow informed speculation that the court decided to require husband to pay at least as much for wife's attorney fees as he did for his own. That is not the

---

[5]Wife did present a portion of the accountant's bills, from which it might be argued we should infer in support of the order that the court found those fees reasonably necessary, and from the parties' relative disparity in incomes we might also infer that requiring the husband to pay the vast majority of those bills might be a proper exercise of discretion. Yet the accountant fees husband was ordered to pay exceeded the balance reflected on the bills. In any event, even as to documented accountant's fees, as set forth above the court's order that husband pay those fees in installments of $1,000 per month would still require reversal and remand.

standard by which the court was to determine the amount of the award. "The major factors to be considered by a court in fixing a reasonable attorney's fee [include] 'the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded [citation]; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed. [Citations.]' [Citations.]" (*In re Marriage of Cueva, supra,* 86 Cal.App.3d at p. 296.) The record reflects no consideration of such issues.

Wife cites authority for the proposition that the court can determine the reasonable value of services based upon its own expertise. Yet, as pointed out by the court in *In re Marriage of Cueva, supra,* 86 Cal.App.3d at page 300, such statements are "overbroad and incorrect." "Correctly stated, the rule is that *when the trial court is informed of the extent and nature of the services rendered,* it may rely on its own experience and knowledge in determining their reasonable value." (*Ibid.,* italics added.) Moreover, " 'The exercise of sound discretion by the trial court in the matter of attorney's fees includes also judicial evaluation of whether counsel's skill and effort were wisely devoted to the expeditious disposition of the case.' [Citation.]" (*In re Marriage of Huntington* (1992) 10 Cal.App.4th 1513, 1524 [14 Cal.Rptr.2d 1].)

The court here was not apprised of the nature and extent of the services rendered, so it could not determine their reasonable value based upon its own expertise. Contrary to wife's assertion, the two-volume clerk's transcript in this case does not in and of itself reflect $35,000 worth of legal work in the approximately three- to four-month period since wife's "new" counsel first appeared in the action. The record also does not reflect " 'judicial evaluation of whether counsel's skill and effort were wisely devoted to the expeditious disposition of the case.' " (*In re Marriage of Huntington, supra,* 10 Cal.App.4th at p. 1524.)

It was an abuse of discretion to order husband to pay wife's attorney fees without making any inquiry into the reasonableness of those fees. Neither the attorney for a party to a dissolution action nor the attorney's client is entitled to recover, from the opposing spouse, a contributive share of *whatever* fees the attorney chooses to charge. Although the attorney's right to recover *from the attorney's own client* may be limited only by the fee agreement and ethical limitations, there are *additional* limitations on recovery of fees from the opposing spouse—including not only that the opposing spouse has the ability to pay, but also that the fees be "reasonably necessary," and that payment of the fees by the opposing spouse is "just and

reasonable" under the relative circumstances of the respective parties. (§§ 2030, 2032.)

The record on appeal does not itself justify fees of this magnitude during the time frame in question. Although in this posture we do not determine such issues, the record on appeal as presently constituted is consistent with a relatively simple dissolution action, to which counsel either claims to have devoted an inordinate amount of time, or to have charged excessive rates, or a combination of the two, resulting in fee claims which at least facially appear out of proportion to the issues presented. Although there may be some legitimate reason for such large fees, it is not reflected in this record. Approval of claims of this type, without prior judicial scrutiny followed by appropriate findings and modification where necessary, is an abdication of the judicial function and an abuse of discretion. Accordingly, the order insofar as the payment of attorney fees and costs must be reversed and remanded to the trial court for the determinations required under sections 2030 and 2032.

## III. DISPOSITION

The order insofar as it directs payment of a contributive share of wife's attorney fees and accountant's fees, and insofar as it directs payment of that total in prescribed monthly amounts, is reversed and remanded to the trial court for the determinations required under Family Code sections 2030 and 2032. In all other respects the order is affirmed. Each party to bear their own costs on appeal.

Nott, Acting P. J., and Mallano, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.