Filed 8/14/14  Marriage of Aguina and Kang CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re the Marriage of AGUINA AGUINA and CHOONG-DAE KANG. | |
| AGUINA AGUINA,<br><br>     Respondent,<br><br>v.<br><br>CHOONG-DAE KANG,<br><br>     Appellant. | E057770<br><br>(Super.Ct.No. SWD015783)<br><br>O P I N I O N |

APPEAL from the Superior Court of Riverside County.  James T. Warren, Judge.

(Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art.

VI, § 6 of the Cal. Const.)  Affirmed.

Law Offices of John M. Siciliano and John M. Siciliano for Appellant.

Aguina Aguina, in pro. per., for Respondent.

1

## I. INTRODUCTION

In this marital dissolution proceeding, appellant Choong-Dae Kang (wife), seeks reversal of an October 26, 2012, order, pendent lite, requiring her to pay $10,000 in attorney fees to the attorney for respondent, Aguina Aguina (husband). Kang claims the family court abused its discretion in issuing the order because it did not follow applicable statutory guidelines. (Fam. Code, §§ 2030, 2032.)[1] We disagree and affirm the order.

## II. FACTS AND PROCEDURAL HISTORY

A. *Background*

Aguina petitioned to dissolve his marriage to Kang in September 2008. The parties have two sons still under the age of 18. By the time the court ordered Kang to pay $10,000 of Aguina's attorney fees on October 26, 2012, the case had already had a "long and twisted history," as the court put it. The parties had long been engaged in protracted litigation in the family and civil courts, and were still disputing child support, spousal support, and the division of their community estate.

The issue of Aguina's attorney fees arose on January 18, 2012, when Aguina, through his counsel, P. Timothy Pittullo, filed an order to show cause why Kang should not be ordered to pay $25,000 of his attorney fees and $3,500 per month in spousal support. Aguina claimed he had run out of money to pay his attorney "to bring an end to this contentious divorce." He claimed Kang had long been refusing to produce

---

[1] All further statutory references are to the Family Code unless otherwise indicated.

documents which would show she had substantial income, and during an October 29, 2010, hearing she falsely represented she had no income when, in fact, she was earning $20,000 each month from the parties' gaming casino in Japan, known as USA, Ltd. Aguina asked the court to order Kang to "withdraw $25,000.00 from either our [c]asino business in Japan or any of our businesses, properties, savings or assets" to provide him with "the means to hire attorney representation."

Meanwhile, Kang sought to modify the court's temporary child support order. In March and April 2012, the parties filed income and expense declarations, using Judicial Council form FL-150.

In his March 2012 income and expense declaration, Aguina claimed he was earning no salary or wage income because Kang had "shut him out" of their casino business; his only income was $1,550 per month in rental property income; and he was borrowing money to cover his monthly living expenses of $3,220. Before Kang shut him out of the parties' casino business, he had been earning a monthly gross income of $15,000 as the casino's director of operations. He claimed Kang had a gross monthly income of $40,050 from rental properties in Japan and businesses she controlled, including the $20,000 income from the casino business.

In her April 2012 income and expense declaration, Kang likewise claimed she had no salary or wage income, even though she was working 30 hours a week as an "officer" for Authentic Ways, Inc., a "marketing, import/export/publishing" company with an office in Los Angeles. She had $5,604 in monthly living expenses. She had inherited an

3

undisclosed amount from her parents' estate and estimated Aguina earned $5,000 each month before taxes.

In March 2012, the court ordered Aguina to disclose the names and identifying information of persons who "assisted him financially." In May 2012, the court ordered a forensic accounting of Kang's income sources and expenses pursuant to Evidence Code section 730, and ordered Kang to pay for the evaluation. The hearings on the parties' respective claims for attorney fees, child support, and spousal support were continued numerous times.

By September 2012, the Evidence Code section 730 evaluation had still not been completed, and the parties filed additional income and expense declarations on September 21 and 25. Kang claimed her only income source was from a family inheritance which "has been in probate court," and she had paid her attorneys $26,000 in fees and costs to date. Aguina claimed he had paid his attorneys $20,000 to date from a personal loan; he was still borrowing funds to pay his living expenses; and he attached a list identifying the persons from whom he had borrowed money and the credit card balances he owed.

B. *The Court's October 19 Findings of Fact and Statement of Decision*

On October 19, 2012, the court issued "[a]mended findings of fact and [d]ecision" on the issues of child and spousal support and Aguina's attorney fees.[2] Based on "the

_____

[2] On August 24, 2012, the court filed its original findings of fact and decision on Aguina's January 18, 2012, order to show cause seeking attorney fees, but modified its decision on October 19.

4

testimony and documents presented by both parties," the court found it was "clear that both parties are enjoying an upper middle-class to upper class life style. [Aguina claims that] he has no income yet he was able to enter into a year lease for a middle-class home at a monthly rate of $1850 per month and he has expenses of $3220 per month not including the rental on the home. He takes frequent trips to Japan and other locations. He has a [Ph.d.] and certainly has the ability to earn a substantial income. He has earned as much as $15,000 per month . . . . He had employment . . . when the parties married and yet . . . has made little or no effort to seek and maintain employment. [He] claims to be living on unsecured loans. How [he] has been able to borrow thousands of dollars and lease a house with no income or any resources is a complete mystery to this court and makes no rational sense. The court finds that [Aguina] has the ability to secure employment and is currently meeting his expenses of $5070 per month."

The court also found "[Kang] also makes frequent trips to Japan and seems to be receiving sizeable amounts of cash from some resource. Her testimony was that . . . these were loans from her mother's estate which she will have to pay back . . . yet she pays a company MSI to manage her affairs[,] paying them $1500 per month in fees. [Aguina] presented evidence of large sums of cash being deposited in [Kang's] accounts but could provide no evidence of the source of these deposits nor what expenses were paid out of these accounts. In all fairness to [Aguina], [Kang,] who seems genuinely unaware of her finances, has not really provided the necessary information to [Aguina] as ordered . . . . [Kang] is again ordered to cooperate in providing that information. It is clear that [Kang]

5

is also meeting her expenses of roughly $6000 together with paying the $1500 to MSI meaning that she has access to $7500 per month."

The court continued: "*I do not believe that either party is being altogether candid with the court as to their sources of income*. Hopefully the [Evidence Code section] 730 forensic expert that has been appointed will be able to provide much assistance to the court and the parties. This court specifically reserves jurisdiction in this case to continue the matter of spousal and child support, spousal support and attorney fees so that those numbers can be adjusted retroactively. Therefore, I am continuing the hearing on child, spousal support, sanctions [for Kang's alleged failure to comply with a September 15, 2011 discovery order], and attorney fees to [October 26, 2012] . . . in hopes of receiving more information from the forensic expert. Right now the court is inclined to use the expenses of $5070 for [Aguina] and $7500 for [Kang] since that appears to be what each of the parties have in the way of disposable funds." (Italics added.)

Based on the parties' monthly expense figures of $5,070 for Aguina and $7,500 for Kang, and their apparent corresponding incomes, the court ordered Kang to pay Aguina $535 per month in child support and $260 per month in spousal support, made the orders retroactive, and reserved jurisdiction to amend the orders so both parties could "continue to collect documentation to prove the earnings (or lack thereof) of each party," and provide the court "with more specific information."

6

C. *The October 26 Hearing on Attorney Fees et al.*

At the hearing on October 26, 2012, the Evidence Code section 730 evaluation of Kang's income and expenses had still not been completed. Aguina's counsel, Mr. Pittullo, argued Kang had not produced all the financial documents she had been ordered to produce on September 15, 2011, and for that reason the court-appointed forensic accountant, Mr. Ross, had not completed the evaluation. Mr. Pittullo argued Kang could "write a check at any time," as she had done in order to pay both her civil and her family law attorneys, and Kang was attempting to "starv[e] [Aguina] out," that is, "get him to the point [where] he can't have legal representation."

Kang's attorney claimed Kang had already produced all of the documents she had been ordered to produce, and her inheritance was still in her parents' estate, tied up in a "lawsuit among family and friends." Thus, Kang's attorney argued Kang was unable to pay the $10,000 sum, but the court said it believed Kang was able to pay the amount. Mr. Pittullo pointed out that Kang had testified she "gets an advance on the Japanese equivalent of two inheritances" (from the estate of her mother, who died in 2008, and her father, who died in 2011), and "when she needs money to live on or for her attorneys for costs of litigation, she merely asks, and they write checks."

At the conclusion of the hearing, the court ordered Kang to pay $10,000 to Mr. Pittullo, who claimed he was owed over $14,000 in fees and costs.[3] The court said it was

---

[3] On October 17, 2012, Mr. Pittullo filed a "supplemental argument" in support of Aguina's request for $25,000 in attorney fees, stating Aguina owed him $13,999.60 in

*[footnote continued on next page]*

7

making the order because Aguina needed the funds to pursue the litigation "on an equal basis and equal footing" with Kang. Although the court recognized that $10,000 was less than the $25,000 Aguina was seeking, it said the $10,000 was a "reasonable amount" and ordered Kang to pay it on or before December 1, 2012.

The court also appointed a special master, James Wiley, to determine whether Kang had produced all the documents she had been ordered to produce; if not, whether the court should impose sanctions against Kang for failing to comply with the court's September 15, 2011, discovery order; and whether Mr. Ross, the court-appointed forensic accountant, had all the documents he needed to complete the Evidence Code section 730 evaluation. Kang was ordered to pay Wiley's fees. The court set a further hearing on the child and spousal support orders on November 6, 2012. Kang timely appealed the October 26, 2012, orders.[4]

### III. DISCUSSION

On this appeal, Kang claims the court did not "adhere to the statutory guidelines of sections 2030 and 2032 in ordering her to pay $10,000 of Aguina's attorney fees, and

---

*[footnote continued from previous page]*
fees and $124.20 in costs, explaining why those fees and costs had been incurred and why Aguina was expected to incur substantial additional fees and costs.

[4] The record on appeal is limited; it includes a reporter's transcript of the October 26, 2012, hearing and an appellant's appendix, which includes (1) Aguina's January 18, 2012, order to show cause, (2) the parties income and expense declarations filed in March, April, and September 2012, (3) the court's August 24, 2012 (original), and October 19, 2012 (amended), findings of fact and decision, (4) a four-page supplemental brief filed by Mr. Puttillo regarding Aguina's request for attorney fees, and (5) the register of actions.

accordingly abused its discretion making the interim order. We disagree. As we explain, the record shows the court followed the statutory guidelines and did not abuse its discretion in issuing the order.

A. *Applicable Legal Principles and Standard of Review*

"Section 2030 provides for the making of an order in a dissolution proceeding that one party pay for the other party's attorney fees and costs pendente lite. (§ 2030, subd. (a)(1).) The statute reflects the public policy of providing, "'"at the outset of litigation, consistent with the financial circumstances of the parties, a parity between spouses in their ability to obtain effective legal representation."'" [Citation.]' (*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866. . . .) The purpose 'is *not* the redistribution of money from the greater income party to the lesser income party,' but rather '*parity*: a fair hearing with two sides equally represented.' (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 251. . . .)

"In ruling on a request for fees and costs under section 2030, the court is guided by section 2032, which provides that an award of fees and costs under section 2030 may be made 'where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties.' (§ 2032, subd. (a); see *In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1055. . . .) In determining what is just and reasonable, 'the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately . . . .' (§ 2032, subd. (b).) In addition to the parties'

9

financial resources, the court may consider the parties' trial tactics. (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 975 . . . ; *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1313-1314 . . . .)

"'[T]he family court has considerable latitude in fashioning or denying an attorney fees award . . . .' (*In re Marriage of Tharp, supra*, 188 Cal.App.4th at p. 1313.) [But] the court's 'decision must reflect an exercise of discretion and a consideration of the appropriate factors as set forth in code sections 2030 and 2032.' (*Ibid.*; see *In re Marriage of Falcone & Fyke, supra*, 203 Cal.App.4th at p. 975 [the record must reflect that the trial court exercised its discretion and considered the pertinent statutory factors].)" (*In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 164-165 [Fourth Dist., Div. Two].)

When a request for attorney fees and costs is made, section 2030 requires the court to "make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court *shall make an order awarding attorney's fees and costs*." (§ 2030, subd. (a)(2), italics added.)

B. *Analysis*

Here, the record shows the court adhered to sections 2030 and 2032 and did not abuse its discretion in ordering Kang to pay $10,000 of Aguina's attorney fees. The court's October 19 amended findings and decision and its comments at the October 26

10

hearing show the court gave considerable thought to the matter and considered all of the evidence available to it in ordering Kang to pay $10,000 of Aguina's fees. The order was reasonably necessary to achieve parity between the parties and equalize their respective abilities to litigate, to conclusion, the long-pending support and other issues.

Aguina was unemployed and claimed to be paying all of his expenses by taking out unsecured loans. He provided names and identifying information of his creditors, as ordered. Although he had at one time earned a gross income of $15,000 a month from the parties' casino business, Kang apparently controlled the casino business and was no longer allowing Aguina to earn any income from it. Aguina owed his attorney, Mr. Pittullo, just over $14,000 in attorney fees and costs as of October 17, 2012, and expected to incur additional fees in litigating the support and other issues to conclusion. Mr. Pittullo was an experienced attorney, and argued Kang was attempting to "starv[e] [Aguina] out" by unnecessarily litigating issues (including the community property character of the parties' debts, which Kang eventually conceded).

On the other hand, the evidence showed Kang was indeed receiving "sizable amounts" of cash from unknown sources. For months, the court deferred ruling on Aguina's fee request *and* on modifying the court's child and spousal support orders, because it was waiting for the Evidence Code section 730 evaluation of Kang's income and expenses to be completed. Though, at the October 26 hearing, the parties disputed whether Kang had produced all financial documents she was ordered to produce on September 15, 2011, Aguina was clearly not responsible for the months-long delay in

11

completing the evaluation.  As Mr. Pittullo argued, the record shows Kang was able to

obtain substantial funds whenever she needed them, in order to pay her attorneys and

living expenses.  By September 21, 2012, Kang had paid her family law attorney,

Christine Greer, $26,000, she claimed, from an "inheritance," but it was unclear how

much Kang was able to draw on her inherence, without having to repay it.  Moreover, it

appeared Kang was earning income from the businesses she controlled, including the

casino business, but the amounts and sources of her income remained entirely unclear.

And unlike Aguina, Kang was apparently current in paying her attorneys.

As indicated, the court has "'considerable latitude'" in fashioning an attorney fee

award.  (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1313.)  We will overturn

the court's order "'only if, considering all the evidence viewed most favorably in support

of its order, no judge could reasonably make the order made.  [Citations.]'  [Citation.]"

(*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866.)  In view of Kang's ability to

readily access sufficient funds to pay her attorneys and living expenses, and the months-

long delay in completing the forensic evaluation of Kang's income and expenses, the

court's $10,000 interim fee order in favor of Aguina was eminently reasonable.

Kang maintains the court abused its discretion in making the order because it cited

no evidence Kang was *able to pay* the $10,000 sum.  Kang relies on *In re Marriage of

Keech*, *supra,* 75 Cal.App.4th 860, where the family court abused its discretion in

ordering the husband to pay $1,000 per month for the wife's accountant fees because the

order left him with only $93 a month to pay "all of life's other expenses" after he paid

12

spousal and child support, and his monthly rental income. (*Id*. at pp. 867-868.) Kang argues the order here is worse because it left her *with no leftover funds,* and forced her to borrow money to pay the $10,000 sum. Kang's reliance on *Keech* is misplaced because in that case it was undisputed that the court's orders left the husband insufficient funds to pay his living expenses. But here, the evidence showed Kang had sufficient funds to pay her living expenses after she paid the $10,000 order.

Kang argues the record does not show the court considered the factors set forth in sections 2030 and 2032. She claims *In re Marriage of Shulze* (1997) 60 Cal.App.4th 519 is guiding on this issue. There, the court ordered the husband to pay $7,500 of the wife's attorney fees "forthwith." (*Id*. at p. 530.) The appellate court found "the $7,500 figure itself unassailable" but held the order to pay it "forthwith" was an abuse of discretion because it left the husband with "less than $2,000 a month in actual cash," and presumed the husband would be able to obtain the $7,500 from his parents. (*Id*. at p. 531.) That presumption was error, the court held, because the husband's parents were not obligated to pay the costs of his divorce. (*Id*. at pp. 531-532.)

Here, in contrast, the court did not presume Kang would be *borrowing* the $10,000 amount from her parents or anyone else. Instead, the court reasonably concluded, based on all of the available evidence, that Kang had ready access to substantial funds that belonged to her and that she would *not have to repay*, whether from the casino in Japan, other businesses Kang controlled, or her parents' probate estate. In *Schulze*, the husband had insufficient liquid assets and no ability to pay the $7,500 sum *forthwith*, unless he

13

borrowed it from his parents. (*In re Marriage of Schulze, supra,* 60 Cal.App.4th at pp. 531-532.)

Kang also argues the court failed to consider her ability to pay her own attorney fees in making the interim order. He relies on *Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 252, where the court observed: "[B]y providing for orders to pay money so that one's adversary can afford an attorney, there is the paradoxical possibility that a court may effectively deprive the paying party of the ability to present his or her own case." But here the record shows the court carefully considered all the available evidence in making the $10,000 fee order, and reasonably concluded it would not deprive Kang of her ability to present her own case.

Lastly, Kang argues the court failed to consider Aguina's ability to earn money. (*In re Marriage of Sullivan* (1984) 37 Cal.3d 762, 769.) Not so. In its October 19 amended findings, the court observed Aguina was well educated, was able to earn a substantial income, and was employed when the parties were married but had since made little to no effort to obtain and maintain employment. But the record shows Kang had a demonstrated history of obtaining as much money as she needed, when she needed it, to pay her attorneys and living expenses. Thus here, the record shows the court did not fail to consider Aguina's ability to earn an income. To the contrary, the court appears to have taken what it called Aguina's ability to earn a substantial income into account in refusing to award Aguina the entire $25,000 sum he was requesting, and instead ordering Kang to pay only $10,000 of Aguina's attorney fees.

14

## IV. DISPOSITION

The October 26, 2012, order requiring Kang to pay $10,000 in attorney fees, pendent lite, is affirmed.  Aguina shall recover his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


KING_____
                                                                                  J.


We concur:

RAMIREZ_____
                        P. J.

MILLER_____
                        J.