Filed 8/12/25  Tragni v. Tragni CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

VITO TRAGNI,

      Petitioner and Appellant,

v.

SANDY TRAGNI,

      Respondent.

A169130

(Alameda County
Super. Ct. No. HF14708832)

Petitioner and Appellant Vito Tragni and Respondent Sandy Tragni were married for almost two decades.[1]  As part of the judgment in their dissolution proceeding, they stipulated that Vito would pay Sandy $7,450 per month in spousal support.  Years later, Vito asked the trial court to end or reduce these spousal support payments.  To defend against Vito's request, Sandy asked for need-based attorney fees and costs under Family Code sections 2030 and 2032.[2]  The court awarded Sandy all of her requested fees and costs and Vito appealed.  We reverse because the record does not reflect that the court considered whether the fees and costs incurred by Sandy

---

[1] Because the parties share the same surname, we refer to them by their first names to avoid confusion.  No disrespect is intended.

[2] All further statutory references are to the Family Code.

1

during discovery " 'were reasonably necessary, including by taking into account overlitigation.' " (*In re Marriage of Nakamoto & Hsu* (2022) 79 Cal.App.5th 457, 469 (*Nakamoto*).)

## BACKGROUND[3]

### A. The Marriage, Divorce, and Request for Order (RFO)

Vito and Sandy married in 1995. According to Sandy, Vito was unfaithful, had a drinking problem, and committed domestic violence against her throughout their marriage.

In 2014, Vito filed a petition for dissolution. Pursuant to the stipulation between Vito and Sandy, the trial court entered judgment in 2016. Under the stipulated judgment, Vito agreed to pay Sandy $7,450 per month in spousal support "through [the] death of either [p]arty, [Sandy's] remarriage, or further [c]ourt [o]rder."

In March 2020, Vito filed a RFO, moving to end or reduce Sandy's spousal support. The RFO alleged that Sandy was "cohabitating with a non-

---

[3] Sandy requested judicial notice of pleadings relating to a domestic violence restraining order (DVRO) that she obtained against Vito in 2016. She contends that these pleadings are relevant because the trial court properly considered Vito's history of domestic violence against her in awarding her attorney fees and costs. In support, she notes that the record already contains documents relating to the second DVRO that she obtained against Vito in 2020 based on his threatening emails and texts to her and their child. We deny the request because the DVRO proceedings are not relevant to the issues raised by Vito in this appeal—e.g., whether the court abused its discretion by failing to consider "the extent to which the requested fees are 'reasonably necessary' " and "both parties' relative abilities to pay those fees." (Accord, *City and County of San Francisco v. Uber Technologies, Inc.* (2019) 36 Cal.App.5th 66, 72, fn. 3 ["We [] deny the [party's] request for judicial notice [of two documents]. . . . because they are not relevant to any dispositive points on appeal"].)

2

marital partner in a romantic relationship;" thereby, justifying a change to his spousal support payments.

### B. Stipulations and Discovery

In December 2020, Vito and Sandy entered into a "Stipulation & Order Regarding Attorney's Fees & Costs." (Capitalization omitted and added.) Under that stipulation, Vito agreed to advance $25,000 to Sandy "for attorney's fees" and Sandy agreed that Vito would receive "credit" for that amount "in any future fees award granted to" Sandy "in this matter."

The next month, Vito and Sandy entered into a "Stipulation & Order Regarding Discovery" (discovery stipulation). (Capitalization omitted and added.) Under that stipulation, the parties agreed that Vito had "an approximate net worth of no less than $28,600,000.00" and an income of "no less than $62,324.00 per month or $747,891.00 per year." As for "any request for attorney's fees and costs sought by" Sandy, they agreed that: (1) "There is a significant disparity in access to funds to retain counsel and to pay for attorney's fees and costs with [Vito] having significantly greater access to funds than [Sandy]"; (2) Vito "has the ability to pay for legal representation for both himself and for" Sandy; and (3) Vito's "significant asset base from which to pay for attorney's fees and costs shall no longer serve as a bar to a need-based request for attorney's fees and costs by" Sandy.

Despite the discovery stipulation, Vito served Sandy with numerous discovery requests, including form interrogatories, special interrogatories, requests for admission, and multiple requests for production of documents, in addition to several informal requests for discovery. He also served numerous subpoenas to Sandy's financial institutions and to companies involved in Sandy's real estate transactions.

3

In April 2022, Vito moved to compel further production of documents in response to his fourth set of document requests and further answers in response to his first set of special interrogatories (discovery motion). According to the motion, he wanted additional "discovery relating to [Sandy's] financial situation" in order "to determine the nature of her financial situation as it relate[d] to her living with, acquiring property with, and comingling funds with her fiancé . . . ." Sandy opposed the discovery motion.

To expedite the resolution of the discovery motion and any other discovery disputes, Vito and Sandy stipulated to a discovery referee in July 2022. Both parties later agreed that the referee could "make binding orders, rather than recommendations to the" trial court.

### C. Sandy's Request for Need-Based Attorney Fees and Costs

In May 2023, Sandy filed a motion for need-based attorney fees and costs (fee motion). In the motion, she asked for $182,827 in fees and costs. Her request included incurred and estimated future fees but deducted the $25,000 that Vito had previously advanced to her in 2020. In support, Sandy stated that she owed $176,555 because of the litigation over Vito's RFO and that she only had $1,047 left in her bank account. She also owned roughly $36,000 in stocks, bonds, and other assets and real property worth approximately $1.5 million. By contrast, Vito had $480,000 in his bank account plus over $5 million in stocks, bonds and other assets and was worth over $41 million.

Vito opposed the fee motion, contending that the requested attorney fees and costs were not reasonable. Among other things, Vito argued that "a large portion of the" fees sought by Sandy were incurred because of her

4

misconduct during discovery.[4]  According to Vito, Sandy was "not entitled to fees incurred as a result of her own overlitigation and unreasonable litigation conduct."  He also noted that his discovery motion was pending before the discovery referee and asked the trial court to wait until the referee had decided that motion before awarding any fees and costs.

### D. The Hearing and Attorney Fee and Costs Award

At the hearing on the fee motion, Sandy reduced her request for attorney fees and costs to $165,188.75 based on her review of "billing statements."  Among other things, Vito countered that the $65,859 in fees and costs relating to discovery requested by Sandy were not reasonably incurred because of her litigation tactics.  The trial court, however, stated that it did not want to "relitigate the discovery dispute" or "get that far down into the weeds in the discovery dispute because that's the [discovery referee's] venue."  Vito countered that the court should wait for the referee to resolve that dispute before awarding any fees and costs because there had been no determination "whether discovery was reasonable."  The court, however, declined to do so and awarded Sandy all of her requested fees and costs.  In support, the court found that "the fees being requested here do not include work on the domestic violence matter" and that "the billing statements provided" were "sufficient legally."  It then found "that the fees requested by [Sandy] are reasonable."  The court did not, however, mention Sandy's discovery tactics or expressly address whether the fees she incurred during discovery were reasonably necessary.

---

[4] Vito also argued that Sandy was not entitled to recover any attorney fees and costs incurred before December 2020 or associated with the DVRO proceedings and that some of the entries in her billing statements were too "nondescript" to support a fee award.  Vito does not challenge the trial court's rejection of these arguments in this appeal.

5

On September 13, 2023, the court issued its order awarding Sandy $165,188.75 in attorney fees (September 13, 2023 Order). Vito timely appealed.

## DISCUSSION

We begin by addressing the alleged defects in Vito's opening brief. First, we reject Sandy's contention that the appeal should be dismissed because that brief omitted "significant facts." She did not, however, identify any of these omitted facts. Moreover, Vito did not raise a sufficiency of the evidence challenge; he only contends that the trial court failed to consider all relevant statutory factors, and his opening brief includes all facts relevant to that contention. Second, we reject Sandy's contention that the argument headings in the opening brief were deficient. In compliance with rule 8.204(a)(1)(B) of the California Rules of Court, those headings identify the applicable rule of law and the two ways that the court allegedly violated that rule of law.

Turning to the merits, we find that the trial court did not abuse its discretion by failing to consider Sandy's financial need. It did, however, abuse its discretion by failing to consider whether the attorney fees and costs incurred by Sandy during discovery were reasonably necessary. We therefore reverse and remand so the court may correct this omission.

### A.    Standard of Review

"[D]eciding whether to award pendente lite attorney fees and deciding the amount of any fees awarded require family courts to resolve questions of law, make findings of fact, and exercise discretionary authority to resolve certain issues. Each of these aspects of the family court's decision is subject to a different standard of review. Its findings of fact are reviewed under the deferential substantial evidence standard. [Citation.] Its resolution of a

6

question of law is subject to de novo review. [Citation.] Where the Legislature has committed a particular issue to the family court's discretion and the court must weigh various factors and choose from a range of options, that discretionary determination will not be disturbed if it falls within the range established by the applicable legal criteria." (*In re Marriage of Knox* (2022) 83 Cal.App.5th 15, 25 (*Knox*).)

"While the [trial] court has considerable latitude in fashioning or denying an attorney fees award, its decision must reflect an exercise of discretion and a consideration of the appropriate factors as set forth in [ ] sections 2030 and 2032." (*In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1313 (*Tharp*).) In other words, "the record *must* reflect that the court did *in fact* consider the factors set forth in sections 2030 and 2032." (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 242, italics added.) And where the court "affirmatively refus[es]" to do so, it has abused its discretion. (*Tharp*, at p. 1314.)

**B.  Analysis**

As a threshold matter, we reject Vito's contention that the record does not reflect the trial court's consideration of Sandy's financial need. The court expressly acknowledged that "ability to pay" was a relevant consideration and Vito agreed at the hearing that the "sole issue" before the court was the "reasonableness" of the attorney fees and costs requested by Sandy—not Sandy's ability to pay. Indeed, Vito never argued in his filings or at the hearing that Sandy's ability to pay should affect the court's fee award.

Vito's second contention—that the trial court did not consider whether the attorney fees and costs requested by Sandy were reasonably necessary—fares better. Because the court refused to consider whether the requested

7

fees and costs were reasonably necessary in light of Sandy's litigation tactics during discovery, it abused its discretion.

Under sections 2030[5] and 2032,[6] a trial court may award attorney's fees and costs that are " ' "just and reasonable" ' " based on the parties' " ' "ability

[5] As relevant here, section 2030 provides that: "(a)(1) In a proceeding for dissolution of marriage, nullity of marriage, or legal separation of the parties, and in any proceeding subsequent to entry of a related judgment, the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party, except a governmental entity, to pay to the other party, or to the other party's attorney, whatever amount is *reasonably necessary* for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding. [¶] (2) When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs. A party who lacks the financial ability to hire an attorney may request, as an in pro per litigant, that the court order the other party, if that other party has the financial ability, to pay a reasonable amount to allow the unrepresented party to retain an attorney in a timely manner before proceedings in the matter go forward." (Italics added.)

[6] As relevant here, section 2032 provides that: "(a) The court may make an award of attorney's fees and costs under Section 2030 or 2031 where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties. [¶] (b) In determining what is just and reasonable under the relative circumstances, the court shall take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320. The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court

to pay" and their "respective incomes and needs" in order to "ensure that each party has access to legal representation to preserve all of the party's rights." ' " (*Nakamoto, supra,* 79 Cal.App.5th at p. 469.)  The court must also consider "whether the fees allegedly incurred were reasonably necessary" (*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 867 (*Keech*); § 2030, subd. (a)(1)), including "the nature and extent of counsel's services," and if the services "were beneficial in avoiding controversy or expediting" the legal process (*In re Marriage of Cueva* (1978) 86 Cal.App.3d 290, 303, superseded by statute on another ground as stated in *Knox, supra,* 83 Cal.App.5th at p. 25).

Thus, " '[i]n determining what is just and reasonable,' " " 'the [trial] court may consider the parties' trial tactics.' " (*Nakamoto, supra,* 79 Cal.App.5th at p. 469; cf. *Tharp, supra,* 188 Cal.App.4th at p. 1314 ["in determining whether to award attorney fees to one party, the family court may consider the other party's trial tactics"].)  " '[S]ervices which have no apparent effect other than to prolong and to complicate domestic litigation . . . may properly be disregarded by a trial court determining whether and in what amount to order one party to contribute to the cost of the other's representation.' " (*Nakamoto,* at p 469.)  Indeed, a court cannot "properly" impose a fee award against one spouse without an "evaluation of the legal work done on [the other spouse's] behalf." (*Keech, supra,* 75 Cal.App.4th at p. 869.)  " ' "The exercise of sound discretion by the trial court in the matter of attorney's fees [therefore] includes [ ] judicial evaluation of whether counsel's skill and effort were wisely devoted to the expeditious disposition of the case." ' " (*Id.* at p. 870.)

<hr />

to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances."

9

In opposing Sandy's fee motion, Vito argued that Sandy overlitigated the case by stonewalling during discovery, causing the parties to incur unnecessary attorney fees and costs. Despite this, the trial court refused to "relitigate" Vito's discovery motion or "get . . . into the weeds" of the parties' discovery dispute. The court also declined to wait for the discovery referee's ruling on the discovery motion before deciding the fee motion as suggested by Vito. As a result, the court *never* evaluated the legal work done on Sandy's behalf during discovery, including whether she engaged in superfluous overlitigation. "Without ascertaining whether" that legal work was " 'reasonably necessary' in light of the issues in the case, the trial court could not properly find that" *all* of Sandy's requested fees and costs were " 'just and reasonable under the relative circumstances of the respective parties' as required by section 2032." (*Keech*, *supra*, 75 Cal.App.4th at p. 869.) This is so even though the court stated that the requested fees and costs were "reasonable." (See, e.g., *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 318 [statement that trial court "considered the relevant circumstances" was inadequate because record established that the court did not consider all relevant evidence and factors], superseded by statute on another ground as stated in *In re Marriage of Morton* (2018) 27 Cal.App.5th 1025, 1049.)

Contrary to Sandy's assertion, Vito did not waive this challenge to the fee motion by responding "[c]orrect" after the trial court expressed its reluctance to wade into the merits of the discovery motion. In making this response, it appears that Vito was only acknowledging that the discovery motion was pending before the discovery referee. He was not conceding that the court need not consider Sandy's discovery tactics. Indeed, Vito made it clear that he was not waiving any challenge based on those tactics when he

10

subsequently argued that her fee motion was "premature" and that the court should wait for the referee's ruling before awarding any fees and costs.

Finally, we reject Sandy's estoppel argument based on Vito's failure to provide evidence of his own attorney fees and costs. The amount of fees incurred by an opposing party "is not the standard by which the court [determines] the amount of the award." (*Keech*, *supra*, 75 Cal.App.4th at p. 869–870.) In any event, the amount of fees and costs Vito incurred has no bearing on whether Sandy overlitigated the case during discovery. If Sandy did overlitigate, Vito's fees would also be unnecessarily inflated.

Accordingly, we remand this case so the trial court can consider whether the attorney fees and costs incurred by Sandy during discovery were reasonably necessary. In doing so, we emphasize the limited scope of our ruling. We do not disturb the court's findings that the requested fees "do not include work on the domestic violence matter" or that the "billing statements provided" by Sandy were "sufficient legally." And aside from the court's failure to determine whether any discovery-related fees and costs were reasonably necessary, we do not disturb the court's finding that "the fees requested by [Sandy were] reasonable." Finally, we express no opinion as to the appropriate amount of fees and costs that should be awarded on remand. So long as the court properly considers Sandy's discovery tactics, it remains free to exercise its discretion to award Sandy all or part of the fees and costs that she has requested.

## DISPOSITION

The September 13, 2023 Order awarding attorney fees and costs to Sandy is reversed. The case is remanded to the trial court with directions to consider whether the $65,859 in discovery-related fees and costs incurred by Sandy were reasonably necessary.

11

CHOU, J.

WE CONCUR.

SIMONS, ACTING P. J.
BURNS, J.

*Tragni v. Tragni*/ A169130