Filed 5/18/16  Marriage of Cadigan CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re the Marriage of VALERIE KIM and JOHN DENNIS CADIGAN. | C072399 |
| VALERIE KIM CADIGAN, Respondent, v. JOHN DENNIS CADIGAN, Appellant. | (Super. Ct. No. 05FL05617) |

John Cadigan earned significant income from exchanging stock options and receiving a severance after the trial court adopted a spousal and child support order in this marital dissolution matter.  Contrary to the letter and spirit of the support order, John did not notify his former spouse, Valerie Cadigan, of the amounts he had earned.  He also did not disclose the amounts in income and expense declarations.  On Valerie's motion, the trial court enforced the support order by awarding Valerie supplemental support and by

1

imposing a schedule by which the parties could calculate future supplemental support on any additional income John earned. The court also awarded attorney fees to Valerie.

John contends the trial court abused its discretion by claiming it was enforcing a support order when really it was modifying an order without sufficient grounds to do so. He also contends the court miscalculated the amount he owed in supplemental support by double counting his severance and by imposing prejudgment interest. In addition, he claims the court abused its discretion in awarding attorney fees. Except to remand for the trial court to recalculate the support award based on its treatment of the severance pay, we affirm the judgment. The court acted within its statutory and equitable jurisdiction by interpreting and enforcing the order as it did, and by awarding attorney fees.

## FACTS

Valerie and John married in 1987. They produced two children; Nicole, born in 1994 and who has since deceased, and Michael, born in 1997, who is severely autistic. In 1994, Valerie, who is an inactive member of the California bar, was placed on disability. She cared for the children while John worked. In 1999, John was named chief technology officer for a company named InsWeb. In 2005, his monthly salary was $14,230, and he periodically received stock options.

Valerie and John separated in 2005, and the trial court entered a dissolution judgment in 2006. The judgment ordered John to pay Valerie $5,000 per month in family support, subject to further order by the court or written agreement by the parties. It also awarded John all of his InsWeb stock options.

In 2007 and 2008, Valerie filed motions to modify support. Since 2007, John had exercised some of his InsWeb stock options and sold the shares he received, earning over $550,000. Valerie claimed John had not reported this information in his income and expense declarations.

On April 16, 2009, the parties resolved Valerie's motion by stipulation, and the trial court approved the stipulation as its order (the "2009 Order" or "Order"). The Order

2

required John to pay Valerie $2,367 a month in child support and $4,733 a month in spousal support, an increase in his monthly support payments of $2,100. Valerie would receive this additional $2,100 a month in support for five years as the amortized support based on the stock options John had exercised.

The 2009 Order also required John to pay Valerie $10,000 in additional child support and $10,000 in additional spousal support within 90 days of the Order. These payments were "in full payment of all agreed upon support."

Of particular relevance here, the 2009 Order contained the following provisions:

"3. [John] shall advise [Valerie] of any bonuses he receives within 15 days of receipt, and of Insweb stock options exercised or raise[s]. [¶] . . . [¶]

"4.5. Each party will notify the other within 15 days of any inheritance or gifts/loans received over $500."

"5. The attached Dissomaster printout reflects a five-year amortization of the proceeds received by [John] from the sale of Insweb stock options. This factor is included in the Dissomaster printout as 9000/mo of other taxable income."

Despite the benefits of the 2009 Order, Valerie moved in October 2009 to vacate the Order based in part on an alleged "unilateral mistake of law and fact and/or actual fraud" by John. She also sought to increase spousal and child support due to changes in state law that reduced public payments for Michael's care and John's alleged failure to disclose some $857,000 in stock options and bonuses received since 2007. She asked the court to order modified support retroactive to November 19, 2007, when she filed her first motion to modify.

The trial court denied Valerie's motion. It ruled the 2009 Order resolved all support issues arising from John's concealed income earned until that time and was res judicata. It also refused to modify support, as Valerie had failed to establish changed circumstances, and the child support she received was already above guideline due to the additional income the Order assigned to John.

3

Valerie appealed, and we affirmed the trial court's denial of her motion. (*In re Marriage of Cadigan* (Nov. 30, 2011, C064348) [nonpub. opn.].)

Meanwhile, John continued to exercise stock options after Valerie filed her 2009 motion to set aside the Order. John notified Valerie in December 2010, March 2011, November 2011, and January 2012, that he had exercised stock options, but he did not provide the amounts he had received. He claimed he notified Valerie that he exercised stock options in May, September, and November of 2011, but at trial, he provided no written proof he notified Valerie of those transactions.

In early 2011, Valerie's mother died, leaving Valerie an inheritance of between $375,000 and $380,000. Valerie did not disclose the inheritance at that time because she did not understand the full value of her inheritance until the end of 2011. She disclosed the inheritance in her next income and expense declaration.

On September 9, 2011, Valerie filed a motion to modify spousal and child support and for attorney fees. That motion is the subject of this appeal. Valerie sought supplemental spousal support and child support based on the increase in John's salary and income from the stock options he exercised after the 2009 Order became effective. She also sought to modify the Order to provide that spousal and child support be adjusted automatically in future years in proportion to any changes in John's income. She argued that because the Order did not specify what information John had to provide her regarding stock options, the Order required the parties to seek judicial modification of support whenever John received supplemental income. To avoid having to return to court on each such occasion, Valerie proposed the court modify the Order to require John to pay her a percentage of his net taxable income as supplemental spousal and child support, all to be paid within 30 days of John receiving any supplemental income.

Opposing Valerie's motion, John informed the court his employer, InsWeb, had been acquired by a company known as Bankrate Corporation. John's employment with InsWeb ended in December 2011. InsWeb gave him severance pay equal to one year's

4

salary. John agreed to work for Bankrate for six months at an annual salary of $218,000. If he remained with Bankrate for six months, he would receive a $20,000 bonus. Bankrate, however, had not offered him long-term employment, and he ended his employment there on June 28, 2012. Because InsWeb had been sold, its employees were required to exercise all of their stock options. John submitted a spreadsheet he claimed reflected all of the stock options he exercised in 2011.[1] The spreadsheet noted John had earned approximately $450,000 from the sale of his stock options in 2010 and 2011.

Valerie asked the court to order John to pay for a forensic accountant in order for her to review all of his financial information. At that hearing, John stipulated that "income from all stock options exercised may be income available for calculation of support." The trial court denied Valerie's request for an accountant, but it informed John that it would reallocate expert witness fees if it found he had failed to disclose or had undervalued the exercise of stock options.

Trial opened with a disagreement about the scope of Valerie's motion and the court's jurisdiction to address it. Valerie argued she was seeking to enforce the 2009 Order and its purported requirement to provide supplemental support when John earned supplemental income from stock options and bonuses after the Order was adopted. She was seeking to modify the Order only to impose an automatic calculation of supplemental support when John earned additional income in the future.

John disagreed, arguing Valerie's motion was a motion to modify support that presented to the court all issues related to support, and it could not be limited as Valerie sought to do. He claimed the motion, as one to modify support, could modify support only from the time the motion was filed in September 2011, not from the 2009 Order. He

---

[1]     John submitted the spreadsheet after Valerie had subpoenaed InsWeb for his employment records. Valerie first learned of John's severance pay from InsWeb's response to the subpoena.

also argued the 2009 Order was silent over any kind of modification of support. It required him only to notify Valerie of his exercise of stock options.

At trial, Valerie and John both testified as to their understanding of the 2009 Order and their intent regarding how the Order would affect future supplemental income by John and supplemental support to Valerie. Initially, John objected to Valerie testifying to the Order's notice provision, arguing it was unambiguous and that parole evidence was not admissible. The court offered to sustain the objection, but it informed John he would not be happy with the court's interpretation of the provision. John withdrew his objection.

Valerie testified the Order required payment of supplemental support when John exercised stock options, but it left it to her to seek a court order to establish the amount of additional support John owed. John testified the Order required him to notify Valerie only if he exercised stock options, and then left it to Valerie to determine whether she would seek supplemental support. We will discuss the parties' testimony in detail below.

Valerie's forensic accountant testified John earned from exercising stock options $14,850 in 2010, $448,459 in 2011, and $23,500 in 2012, a total of $486,809. John either did not report or underreported these stock options in the three income and expense declarations he filed during that time. In early 2012, John also received his one-year severance payment from InsWeb for $211,650. John did not disclose this income in his income and expense declaration.

The accountant testified that in his opinion, based on the difference between the support John actually paid and the support due on actual income, John's unpaid support liability from January 2009 through June 2012, including interest, was $280,923. Using a DissoMaster bonus schedule as an aid, he opined John's unpaid support liability for the same time, including interest, was $249,433.

The trial court granted Valerie's requested relief. It awarded her $249,433 in additional spousal and child support. It required both parties to notify the other of receipt

6

of any future raises, bonuses, exercises of stock options, inheritance, or gifts, and for the notice to include the amount of funds received. The court also required John upon the receipt of any such income to pay additional support to Valerie according to a bonus schedule the court attached to its order.

The trial court stated it was enforcing the 2009 Order, not modifying it. The court noted it had no authority to modify support absent a material change of circumstances since the Order was filed, and it held it was "unable to categorically find that a material change of circumstances exists upon which to modify support." However, although circumstances had not significantly changed, the court ruled the Order lacked "specificity and, mindful of a significant potential for raises, bonuses, or stock option exercises, a bonus schedule consistent with [*In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 (*Ostler & Smith*)]." The court thus included a bonus schedule with its order and applied the support percentages used in that schedule to the stock option income John had failed to disclose. The court commented: "While [John] both objects and bristles at the court's inclusion of a bonus schedule, having declined to find good cause to modify support, the court's focus is on effectuating the apparent *original* intent of the parties in their respective disclosures to provide support appropriate to their and their son's circumstances." (Original italics.)

The trial court also awarded attorney fees and costs to Valerie. It awarded $108,638.86 in fees under Family Code section 2030 and an additional $20,000 as a sanction under Family Code section 271.[2] It awarded $19,867 in costs under sections 2030 and 2032.

---

[2]     Further undesignated references to sections are to the Family Code.

DISCUSSION

John appeals and raises the following contentions:

1. The trial court erred by denying his request for a statement of decision and failing to address controverted issues in the decision it issued;

2. The court did not merely enforce the 2009 Order, but it improperly modified the Order, erroneously relied upon parole evidence to interpret the Order, and reached an interpretation that is not supported by the evidence;

3. The court exceeded its jurisdiction and abused its discretion in modifying the Order;

4. The court had no authority to enforce the Order nunc pro tunc to include stock option income earned after the Order was filed but before Valerie filed her motion;

5. The court erroneously counted John's severance pay twice in calculating support;

6. The court had no authority to award prejudgment interest; and

7. The court abused its discretion in awarding attorney fees.

We address each argument in turn.

I

*Statement of Decision*

John requested the trial court file a statement of decision. He asked the court to address six primary controverted issues. The trial court denied John's request as untimely. However, it declared its tentative decision was its statement of decision, and it modified its tentative decision to address some of the concerns raised by the parties.

John contends the trial court erred by denying his request for a statement of decision as untimely. He also claims the statement of decision is inadequate as a matter of law, and thus the doctrine of implied findings does not apply to this appeal.

8

We agree the trial court erred by denying John's request, as he made his request timely. However, any error was without prejudice, as the court filed a statement of decision. We also conclude the statement was adequate and that the doctrine of implied findings applies.

A party must file a request for a statement of decision within 10 days after the trial court serves a written tentative decision. (Code Civ. Proc., § 632; Cal. Rules of Court, rule 3.1590(d).) If the court serves the tentative decision by mail, the party is provided an additional five days under Code of Civil Procedure section 1013, subdivision (a), to file his request. (*Staten v. Heale* (1997) 57 Cal.App.4th 1084, 1090.) To be timely filed, however, the court must receive the request within the 15-day time period. (*Ibid.*)

Here, the trial court served its tentative decision by mail on September 17, 2012. The court received John's request on October 2, 2012. October 2 was the 15th day after service of the tentative decision. John's request was thus timely made, and the trial court erred by ruling otherwise. However, the error is without prejudice, as the trial court issued a statement of decision anyway.

That leaves us with deciding whether the statement is legally adequate. John argues the statement is inadequate as a matter of law because it addressed only "selective aspects" of the six issues he raised in his request. That the statement may not have addressed each of the six issues he raised does not make it legally inadequate.

"[T]he trial court is not required to respond point by point to issues posed in a request for a statement of decision. 'The court's statement of decision is sufficient if it fairly discloses the court's determination as to the ultimate facts and material issues in the case.' [Citations.]" (*In re Marriage of Burkle* (2006) 139 Cal.App.4th 712, 736, fn. 15.)

The trial court's statement of decision–17 pages long–satisfied this standard. The court disclosed the court's determinations of the case's ultimate facts and material issues. The court recited its factual findings in detail and addressed the material issues before it. It ruled it was interpreting the Order, not modifying it. It also weighed the evidence of

9

the parties' intent for the Order and their actions since the Order was filed. It considered the required factors for determining awards of support. In addition, it considered the required factors for awarding attorney fees and costs in this matter. The court's statement of decision adequately disclosed the court's determinations of the material issues and the ultimate facts relevant to those issues.

Moreover, because the statement of decision resolved the case's controverted issues, the doctrine of implied findings applies to this appeal. (Code Civ. Proc., § 634.)

II

*Enforcing the 2009 Order*

John contends the court improperly modified the 2009 Order under the guise of enforcing it. He claims Valerie sought to modify the Order, not enforce it. Even if she was seeking enforcement, John argues the court interpreted the Order incorrectly, as it improperly relied on parole evidence to interpret the Order, and no substantial evidence supports the court's interpretation. We conclude the court did not abuse its discretion by treating Valerie's motion as one for enforcement, as John addressed the enforcement argument on its merits. We also conclude John forfeited his challenge to the court's reliance on parole evidence. Further, we conclude substantial evidence in the record supports the court's interpretation of the Order.

The trial court treated Valerie's motion as one for enforcement, and it did not abuse its discretion in doing so. Despite referring to her motion in her briefing as one to modify support, Valerie stated at court that she was seeking to enforce the 2009 Order. Moreover, John understood her to be seeking enforcement of the Order as well as a modification. In his trial brief, John restated Valerie's argument; she claimed the 2009 Order's requirement that he notify her of exercised stock options was "an agreement to automatically modify child and spousal support according to some unspecified formula . . . [to] 'reimburse' her for amounts she claims should have been paid pursuant to the

10

[2009 Order]." John described her argument as interpreting the Order to require supplemental support.

John was not prejudiced by the court's treating the motion as one for enforcement. In his trial brief, he addressed the enforcement argument on its merits. He acknowledged his income from stock options "received over a period of years must be considered in setting support." However, he claimed the 2009 Order unambiguously obligated him only to notify Valerie if he exercised future options. He contended the parties resolved the issue of stock option income from past and future exercises of stock options in the 2009 Order, in which he agreed to add $9,000 a month, or $108,000 a year, to his gross income calculations for the next five years to amortize his stock option income.

Where, as here, both parties argued before the trial court the issue of whether it should interpret and enforce the Order to require supplemental support upon future exercises of stock options, the trial court did not abuse its discretion or act outside its jurisdiction in considering that issue.

We turn to the trial court's interpretation and enforcement of the 2009 Order. John contends the Order was an unambiguous and integrated agreement that, on its face, did not require the use of bonus tables or otherwise require supplemental support. He claims the court erred in determining the Order was ambiguous and admitting Valerie's testimony to determine the parties' intentions. He also claims the evidence does not support the court's interpretation of the Order. We conclude John has forfeited his first contention, and his second does not withstand critical review.

John has forfeited his claim against the trial court's admission of extrinsic evidence to interpret the Order. At trial, John initially objected when Valerie was asked for her understanding of the Order's provision that required John to notify her when he exercised stock options. He claimed the provision was unambiguous and did not require extrinsic evidence for its interpretation. The trial court stated it was willing to sustain the objection, but it thought John would not like its interpretation of the provision. The court

11

asked John if he wanted to exclude extrinsic evidence of the parties' understanding. John did not, and he withdrew the objection.

Because John intentionally withdrew his objection at trial that extrinsic evidence was inadmissible due to the Order's clarity, he cannot raise the same argument here. (*In re Carrie W.* (2003) 110 Cal.App.4th 746, 755.) We thus presume the trial court correctly determined from the extrinsic evidence that the Order was reasonably susceptible to more than one meaning, and it lawfully relied upon that evidence to aid its work of interpretation.

We thus are left with determining whether the trial court reasonably interpreted the Order. When interpreting a stipulation and court order, we apply the following rules of contractual interpretation: " 'A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful.' (Civ. Code, § 1636.) 'The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity.' (Civ. Code, § 1638.) 'When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible . . . .' (Civ. Code, § 1639.)

"Parol or extrinsic evidence is admissible to resolve an ambiguity. (*Garcia v. Truck Ins. Exchange* (1984) 36 Cal.3d 426, 435; *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 38; Code Civ. Proc., § 1856, subd. (g).). . . . The trial court's resolution of an ambiguity is . . . a question of law if no parol evidence is admitted or if the parol evidence is not in conflict. However, where the parol evidence is in conflict, the trial court's resolution of that conflict is a question of fact and must be upheld if supported by substantial evidence. (*Id.* at p. 1166.)" (*WYDA Associates v. Merner* (1996) 42 Cal.App.4th 1702, 1710.)

John has already conceded the income he earned from stock options was available to provide supplemental support. However, he contends the court without any basis unreasonably interpreted the Order to guarantee Valerie supplemental support

12

automatically and to imply an intent by the parties to have the Order include a mechanism for calculating that support.  He also contends he did not violate the Order by giving Valerie notice of only the fact he had exercised a stock option, but rather complied strictly with the Order's terms.  He thus claims the trial court did not just enforce the Order, but it unlawfully modified the Order by providing supplemental support automatically, providing a mechanism to calculate that support in the future, and imposing a requirement to provide a more detailed notice of future supplemental income, all without basing its ruling on a significant change of circumstances.

Valerie, on the other hand, argues the trial court reasonably interpreted the Order. She asserts both she and John understood the Order required payment of supplemental support, and the Order's notice provision was based on that understanding.  She does not contend the schedule to calculate future supplemental support was part of the Order. However, she argues the court could impose the schedule as a remedy to John's breach of the Order's notice provision, and pursuant to its equitable power to make substantial justice between the parties.

The extrinsic evidence supports the trial court's interpretation of the 2009 Order as guaranteeing Valerie supplemental support whenever John earned additional income from bonuses and stock options.  Valerie testified the notice provision was included in the Order because John's stock options could not be valued until they were exercised. Her right to support from the options exercised prior to the Order had been settled with the Order, but John held many more options that could not be valued until they were exercised.  The notice provision was included in the Order "so when he sold [a stock option] he would notify me that he sold it, tell me the amount, and then we would come into Court or settle it on a bonus scale or some DissoMaster scale, something like that." "I can't get anything done without coming back to court.  That is–that is why I'm here." Valerie stated that with this action, "[a]ll I'm trying to do is have the agreement we

13

reached in April of 2009, the stock options, actually given a value, and the support figured out from there going forward."

John's testimony is not dissimilar. When John signed the stipulation that became the 2009 Order, he understood he was required to notify Valerie in the future if he received any bonuses or exercised any stock options. John also agreed that at his deposition, he testified he understood he was to notify Valerie of the amount of stock options he exercised because at the time of the Order, the options' value could not be determined.

When asked if he knew that he was required to provide this information to Valerie because she was entitled to a percentage of his additional income as supplemental support, John said he did not know if he read that much into it. However, he next testified that he understood Valerie needed to know about his exercising stock options or receiving bonuses because she needed the information to return to court to adjust support. He also understood that if Valerie returned to court, she would use some type of bonus schedule or a program to calculate the additional support due.

John stated he gave Valerie minimal information when he notified her about exercising stock options because that was all the 2009 Order required him to do. At his deposition, John stated he provided Valerie with "as little [information] as possible" about his stock options. John understood he was to provide Valerie information about income from his stock options because she may have been entitled to some payment from his exercising the options. Despite this understanding, he gave Valerie little information because doing so, in his opinion, satisfied the terms of the Order. He also knew Valerie might come back to court to have a DissoMaster prepared reflecting the new income and obtain an order, but he assumed Valerie would just ask him more questions. In his deposition, John stated he gave Valerie little information because he always assumed Valerie "would request a DissoMaster, I would fill it out, and then it's all legal." At trial, he clarified that he meant to say an income and expense declaration in his deposition, not

14

DissoMaster. He would not have to go back to court to fill out a declaration. It was not his understanding that the only way Valerie could obtain supplemental support would be through a court motion.

From this testimony, we find substantial evidence to support the trial court's interpretation of the 2009 Order. Both parties believed the Order entitled Valerie to supplemental support when John earned additional income from bonuses and stock options. Both parties understood the notice required of John was to provide Valerie the information she needed to obtain the supplemental support. John even understood the Order did not require Valerie to have to go to court to obtain the support; she would be entitled to it just by his completing an income and expense declaration. In addition, John believed that if Valerie returned to court, she would use some type of schedule like a DissoMaster to determine the amount he would owe.

From this evidence, the trial court reasonably determined the Order guaranteed Valerie supplemental support upon John earning additional income from bonuses and stock options. The very purpose of the Order's notice requirement was to make this right effective.

We also conclude the trial court lawfully exercised its discretion by imposing a more detailed notice requirement and a schedule to calculate future supplemental income. The court had authority to enforce the Order "by any other order as the court in its discretion determines from time to time to be necessary." (§ 290.) John believed the Order contemplated Valerie using some type of schedule to calculate the amount due. The parties also understood that despite the Order's sparse description of the notice requirement, its purpose could be met only if John provided Valerie the amounts he earned in additional income, something John did not do. The court's response to this evidence equitably implemented the parties' intent, and did not constitute an unlawful modification of the Order.

15

Because we affirm the trial court's enforcement, we need not address John's arguments alleging the court wrongfully modified the Order. We also reject John's assertion that the court violated the nunc pro tunc doctrine by ordering supplemental support for additional income John earned after the 2009 Order was entered but before Valerie filed this motion in September 2011. The court was enforcing the Order, not modifying it, and thus had jurisdiction to order John to pay support on income earned after April 2009 and before September 2011.

III

*Supplemental Support Based on Severance*

John contends the trial court in effect charged him twice for support based on his severance pay from InsWeb. We agree the court charged him twice to an extent, and we will remand the matter for the court to adjust the award of supplemental support accordingly.

Recall that the 2009 Order required John to pay $7,100 in monthly support for five years based on his monthly salary and the additional income he had earned from exercising stock options prior to the Order's filing. In 2012, John in effect received two salaries: his severance pay of one year's salary from InsWeb, and his monthly salary from Bankrate. Thus, the supplemental support award had to be based on the "salary" that was in addition to the salary on which the primary support award was based.

During the proceedings on Valerie's motion, John also moved to modify support because he was unemployed by the end of June 2012, after his employment with Bankrate ended. The trial court denied his motion, ruling (on Oct. 12, 2012) that since he was paid through December 31, 2012, the motion was premature. The court's denial was "without prejudice to his employment and income status as of January 1, 2013."

However, when the court awarded Valerie *supplemental* support based on John's stock options and bonuses, it based the award in part on John's severance pay from InsWeb and not on his salary from Bankrate. If, by doing so, the court concluded John's

16

*primary* support obligation of $7,100 per month during 2012 was based on his income from Bankrate and not the severance pay, the court based his primary support obligation for the last six months of 2012 when he was unemployed on the last six-months' worth of severance pay, an income for which John was already charged for supplemental support. Under this reasoning, John's motion to modify was ripe when he became unemployed.

On the other hand, if the court assumed John's primary support obligation was based on his severance pay from InsWeb, treating it as a monthly salary spread over 12 months (hence, the court held his motion to modify was not ripe until the end of that 12-month period), then the court should have based the supplemental support award on John's six-month salary from Bankrate, not the 12-month severance pay.

Because the court's ruling and its reasoning are conflicting, we remand the matter for the court to recalculate the supplemental support award.

IV

*Award of Prejudgment Interest*

In calculating the amount owed in supplemental support, the trial court added interest at the rate of 10 percent starting 30 days after John received income from exchanging a stock option or a bonus. The total interest awarded was $15,524.

John contends the court erred in awarding this interest. He refers to the interest as prejudgment interest, and asserts the court had no authority to award prejudgment interest under Civil Code section 3287. That statute mandates a trial court to award prejudgment interest on an amount of damages that are certain or capable of being made certain (liquidated), and it authorizes a trial court, within its discretion, to award prejudgment interest upon a breach of contract claim where the damages are unliquidated. (Civ. Code, § 3287, subds. (a), (b).) John argues Valerie could not recover prejudgment interest under either option.

John mischaracterizes the trial court's award of interest as prejudgment interest. It actually is *postjudgment* interest imposed by statute on John's arrearages under the 2009

17

Order's obligation to pay supplemental support.  (Code Civ. Proc., §§ 685.010, 685.020.)  As we have explained, the court interpreted the 2009 Order to require supplemental support upon John's receipt of income from exchanging stock options.  It thus imposed interest from the time those obligations became due and for so long as the arrearages remained unpaid.  The court did not err in doing so.

V

*Attorney Fees*

The trial court awarded Valerie $108,638.86 in attorney fees under section 2030, a need-based award to ensure parity of legal representation, and it awarded $20,000 in attorney fees under section 271 as a sanction.  The court also awarded Valerie $19,867 in costs under sections 2030 and 2032.

John contends the trial court abused its discretion by awarding Valerie her attorney fees and costs.  He claims the amount awarded in fees is not supported by the evidence; the court wrongly refused to provide a computation of its award; and the court failed to determine, and could not have determined, that the amount of fees and costs were "reasonably necessary" for Valerie to maintain her action.  (§ 2030, subd. (a)(1).)  We disagree with John's contentions and affirm the award.

We must affirm an award of attorney fees absent a showing that the trial court clearly abused its discretion.  We reverse only if no judge could reasonably have made the order, considering all of the evidence viewed most favorably in support of the order.  (*Marriage of Sullivan* (1984) 37 Cal.3d 762, 768-769.)

While the court has considerable latitude in granting or denying a fee award, " 'its decision must reflect an exercise of discretion and a consideration of the appropriate factors.  [Citations.]'  [Citation.]  The trial court's discretion in this area is thus limited by the statutes that enable the exercise of that discretion.

"Under section 2030, subdivision (a):  'During the pendency of a proceeding for dissolution of marriage . . . , the court may, upon (1) *determining an ability to pay* and

18

(2) consideration of the *respective* incomes and needs of the parties in order to ensure that *each* party has access to legal representation to preserve all of the party's rights, order any party . . . to pay the amount *reasonably necessary* for attorney's fees and for the cost of maintaining or defending the proceeding.' . . . Under section 2032: '(a) The court may make an award of attorney's fees and costs under Section 2030 . . . where the making of the award, and the amount of the award, are *just and reasonable under the relative circumstances* of the respective parties. [¶] (b) In determining what is just and reasonable under the relative circumstances, the court *shall* take into consideration the need for the award to enable *each* party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320 [the factors for determining spousal support] . . . . Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances.' " (*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866-867 (*Keech*), original italics.)

" 'The major factors to be considered by a court in fixing a reasonable attorney's fee [include] "the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded [citation]; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed. [Citations.]" [Citations.]' [Citation.]" (*Keech, supra,* 75 Cal.App.4th at p. 870.)

John initially claims the trial court abused its discretion because it awarded significantly more in fees and costs than it found Valerie had expended. John points to a line in the court's decision where the court stated: "In pursing the enforcement of the instant action, Valerie has incurred significant fees ($33,500) and costs ($16,000) . . . ."

19

However, the court went on to state Valerie had incurred over $250,000 in total fees in trials and an appeal, against which she had paid $187,000.

At trial in August 2012, Valerie testified she had incurred $90,000 in fees on this enforcement motion, and her attorneys estimated she would incur an additional $40,000 to bring the matter to trial. Valerie also stated she had incurred between $15,000 and $16,000 in expert witness costs, and she anticipated incurring more when the expert testified at trial.

Valerie's trial attorneys submitted detailed billing statements in support of Valerie's fee request. They documented that Valerie had incurred $72,206.36 in fees on this matter through June 2011. Counsel also stated she anticipated another $40,000 in fees to try the case. John introduced no evidence to contradict these facts. Accordingly, the evidence was sufficient to support the amounts the court awarded in fees and costs.[3]

John faults the court for not providing a calculation showing how it arrived at its final fee award after he specifically asked for one as part of his request for a statement of decision. He also contends the court did not consider whether the fees it awarded were reasonably necessary for Valerie to maintain her action. As stated earlier, a statement of decision need state only ultimate facts rather than evidentiary facts. (*Ingredient Communication Council, Inc. v. Lungren* (1992) 2 Cal.App.4th 1480, 1497.) The court's

---

[3] John contends counsel's billing statements were not admitted into evidence. On the first day of trial, the court stated one of the issues before it was the award of attorney fees. However, the court refused to take judicial notice of the case file, asking the parties instead to seek judicial notice of the particular documents the parties referenced during their cases. Valerie apparently did not request the court take judicial notice of her request for fees and supporting declarations, which included the billing statements. But she did not need to. When the court addressed attorney fees, it was addressing her request for fees and the supporting evidence. Valerie did not need to ask the court to take judicial notice of a motion it was adjudicating.

statement of decision stated the ultimate facts on which it based is award, and it disclosed its consideration of the reasonableness of the fees.

The statement of decision stated the court's analysis for awarding fees. It reads: "Family Code section 2030 introduces such factors as income disparity, income and needs assessments, the costs of maintaining or defending, ability to pay, trial tactics, spousal intransigence, while Family code section 2032(b)'s 'just and reasonable' test states that even if a 'party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested.' In other words, despite reference to a party's means, '[f]inancial resources are only one factor for the court to consider.' In addition, various other factors may be considered by the court in an award of attorney fees and costs; for example, a party's resources, a party's fiduciary breach, and a proceeding to modify support. This is a proceeding in which [Valerie] has demonstrated not merely an income disparity compelling relief pursuant to Family code section 2030, but tactics perpetrated by [John] that compelled Valerie to maintain suit with a concomitant affect pursuant to Family code section 271." (Fns. omitted.)

The income disparity was obvious. Valerie's net worth was around $30,000, while John's declared net worth was approximately $935,000. The court wrote: "Valerie's declaration establishes her limited means; while, John's, in contrast, displays not only significant means but contains information deliberately designed to mislead. [¶] . . . John, by his selective effort at candor, has done himself a significant disservice."

The court stated the "parties' separation has reciprocally affected each former partner: father has emerged more fiscally sound, while mother has emerged more fiscally modest and deeply reliant on father, her mother, and occasionally others. Father has extinguished debts, mother has incurred debts. [¶] . . . It cannot be readily ignored that Valerie, in the meantime, has incurred significant debt in the furtherance of this action for support based on John's obfuscating efforts for attorney fees, and expert costs. When

21

balanced against the assets and income this family has, the expenditure of tens of thousands of dollars to pursue an appropriate allocation of support has placed Valerie, at the very least, in an untenable and unwarranted position."

The court placed significant emphasis on John's recalcitrance in providing Valerie with complete notice under the 2009 Order of the amount he earned on stock options and in omitting or understating the value of his exercised stock options in his income and expense declarations. John did not disclose the sums he had received from stock options until after Valerie filed a discovery motion. The court wrote: "Simply put, John has failed to both accurately and properly characterize sums received in what emerges as a patent effort to minimize his receipts and the concomitant fiscal affect toward any ultimate support order. [¶] . . . John, taking a puerile approach, subsequently claims he submitted a spreadsheet detailing sums received. He did. But after Valerie made substantial inquires, filed discovery requests, and an order to show cause. And John's spreadsheet, while revealing, also followed Valerie's receipt of his employment records, her retention of a forensic accountant, and her evidence pursuit to determine with particular accuracy what John received. [¶] . . . John's approach is neither laudable nor without concomitant affect."

The court also noted: "As it stands, [John] complains that Valerie is litigious by enforcing a motion to obtain support commensurate with his stock option redemption, ignoring his complicity in forcing this matter to hearing. This, too, is not without affect as it will pertain to Valerie's prayer for attorney fees."

The trial court fully explained the evidentiary and ultimate facts upon which it based its order. The parties were in disparate financial conditions. Valerie had to incur the costs of pursuing this matter due to John's refusal to disclose the amounts he received from exercising his stock options despite his concession that those funds were available for providing supplemental support. It was not until Valerie pursued discovery that John disclosed the income he had gained.

22

Moreover, as the court that held the trial, the court was able to address all of the factors suggested in *Keech* to evaluate the necessity of the work Valerie's attorneys performed. It observed counsel's performance. It also had before it counsel's billing statements to consider the reasonableness of counsel's actions and the time expended. To the extent the court's analysis of these points is not included in the record, we presume the court applied the law and fulfilled its duty to consider the reasonableness of counsel's actions in light of the evidence.

Even if, for purposes of this discussion, the award may be excessive, John's conduct would justify it. The intentional omission in his declarations of income he earned from stock options and his refusing to provide that information to Valerie is what led to this matter. Knowing his additional income was available for supplemental support, John did all he could to prevent Valerie from obtaining that support. Such intransigence only added to the expense of this matter and led to Valerie incurring more fees and costs than would have been required otherwise. That factor also supports the court's determination of reasonableness, its award of fees, and its award of sanctions. (See *In re Marriage of Kozen* (1986) 185 Cal.App.3d 1258, 1264 [large fee award upheld in part due to husband's lack of cooperation in discovery and his concealment and improper accounting of community funds].)

## DISPOSITION

The matter is remanded for the trial court solely to recalculate the support award as it reflects John's severance pay from InsWeb, consistent with this opinion. In all other

respects, the judgment is affirmed. Costs on appeal are awarded to Valerie. (Cal. Rules of Court, rule 8.278(a).)


                                                 NICHOLSON      , Acting P. J.


We concur:


       ROBIE           , J.


       MAURO          , J.